# KIMBALL v. SUCCESS MINING COMPANY et al.

No. 2091.   Decided August 27, 1910 (110 Pac. 872).

1. CORPORATIONS—STOCK SALES ON DELINQUENT ASSESSMENTS—REMEDIES.   That stock was sold under a void delinquent assessment does not entitle the shareholder to sue the corporation's successor after eight years to issue stock to him.   (Page 91.)

2. CORPORATIONS—DIVIDENDS—DISTRIBUTION. A corporation whose property was exchanged for stock of another corporation, and not the latter, was charged with the duty of distributing the stock; the latter corporation not being bound to see that the proper persons were recognized as stockholders, and that each received his share.   (Page 91.)

3. CORPORATIONS—DIVIDENDS—DISTRIBUTION.   There is no legal distinction between distribution of corporate stock as a dividend and distribution of the equivalent in money.   (Page 92.)

4. CORPORATIONS—DIVIDENDS—DISTRIBUTION.   If a corporation whose stock was exchanged for the property of another corporation was bound to distribute the stock among the shareholders of the latter corporation, it was not bound to recognize as such shareholder one whose stock appeared to have been sold several years before on a delinquent assessment, though the sale was void.   (Page 95.)

5. CORPORATIONS—DIVIDENDS—DISTRIBUTION.   Evidence *held* to show that the president of a corporation was not negligent in failing to recognize plaintiff as a shareholder in a stock dividend.   (Page 95.)

6. CORPORATIONS—DIVIDENDS—DISTRIBUTION.   Defendant, a purchaser of corporate stock, which was sold to his transferror on a delinquent assessment, was not chargeable with notice of the delinquent's rights, though the sale was void, where the books did not disclose the invalidity, and where the transferror had been recognized by the corporation as the owner of the stock, though defendant later became a director and officer.   (Page 96.)

7. CORPORATIONS—STOCK—SALE ON DELINQUENT ASSESSMENT.   One suing to recover a dividend as a shareholder, his shares having been sold at a void sale on a delinquent assessment, cannot rely on the fact that no entry was made in the stock ledger of the certificate issued to the purchaser, where his own certificate was not so entered.   (Page 98.)

8. CORPORATIONS—STOCKHOLDERS' MEETING—RESOLUTION—RATIFICATION.   One suing to recover a dividend as a shareholder, basing

his right on resolutions adopted at a stockholders' meeting, ratified them as fully as if he had voted for their adoption. (Page 99.)

9. TRIAL—FINDINGS—CONFORMITY TO ISSUES. Findings outside the issues and contrary to the theory on which an action is based are improper. (Page 99.)

APPEAL from District Court, Third District.—*Hon. C. W. Morse,* Judge.

Action by M. Kimball against the Success Mining Company and others.

Judgment dismissing complaint. Plaintiff appeals.

AFFIRMED.

*C. S. Patterson* and *G. W. Moyer* for appellants.

*Howat & Macmillan* and *D. H. Thomas* for respondents.

APPELLANT'S POINTS.

It is the duty of every corporation to use reasonable diligence in each case to ascertain whether or not a transfer of stock requested is duly authorized by the former owner, to make transfers so authorized, and to prevent those unauthorized; and for every breach of this duty it is liable to the injured party for the damage it inflicts. (*Geyser-Marion Gold Min. Co. v. Stark,* 106 Fed. 558; *Shaw v. Spencer,* 100 Mass. 382; *Sturtevant v. Jacques,* 14 Allen 523; *Fisher v. Brown,* 104 Mass. 259; *Duncan v. Jaudon,* 15 Wall. 165; *Bank v. Insurance Co.,* 104 U. S. 54; *Welles v. Larrabee* (C. C.), 36 Fed. 866; *Bank v. Parsons,* 54 Minn. 56 (55 N. W. 825); *Gaston v. Bank,* 29 N. J. Eq. 98; *Bundy v. Monticello,* 84 Ind. 119; *Gerard v. McCormick,* 130 N. Y. 261 [29 N. E. 115]; *Bailey v. Finch,* L. R. 7 Q. B. 34; *Pannell v. Hurley,* 2 Colly. 241; *Duggan v. Agency Co.,* 30 Am. & Eng. Corp. Cas. 89; *Sweeny v. Bank,* 12 Can. Sup. Ct. 661; *Bank v. Lange,* 51 Md. 138; *Swift v. Williams,* 68

Md. 236 [11 Atl. 835]; *Marbury v. Ehlen,* 72 Md. 206 [19 Atl. 648]; Lowell Stocks, sec. 69; Mor. Priv. Corp., secs. 181, 184; Cook on Corporations, secs. 325, 327; *Lowry v. Bank,* 15 Fed. Cas. No. 8581; *Stewart v. Insurance Co.,* 53 Md. 575; *Chapman v. City Council,* 28 S. C. 373; *Bayard v. Bank,* 52 Pa. St. 232; *Mobile & Ohio Ry. v. Humphries,* [Miss.], 7 So. 522; *Loring v. Salisbury Mills,* 125 Mass. 138; *Telegraph Co. v. Davenport,* 7 Otto. 369; *Pollock v. Bank,* 3 Selden [N. Y.] 274; *Magwood v. Bank,* 5 S. C. 379; Perry on Trusts, sec. 242; 10 Cyc. 612.)       ,

The action of the stockholders and directors of the Success Mining Company, and the receipt by it from the Colorado Company of the certificate for 79,500 shares of Colorado stock, made the stockholders of the Success Company stockholders in the Colorado, and the Success and its officers trustees for the proper distribution thereof. (*McGill v. Holmes,* 52 N. Y. Supp. 840; *King v. Railway Co.,* 29 N. J. L. 82; *March v. Railway Co.,* 43 N. H. 515; *Exp. Winson,* 30 Fed. Cas. No. 17884; *Matter of Le Blanc,* 4 Abb. N. Cas. [N. Y.] 221; *Beers v. Bridgeport Spring Co.,* 42 Conn. 17.)

The Success Company was absolutely bound to know who its stockholders were. (5 Thomp. Corp., sec. 6529, and cases cited; 3 Thompson Corp., sec. 4090 *et seq.;* 10 Cyc. 787.)

The holder of stock which has been overissued is not a stockholder at all and if he secures any of the property of the corporation he must account for it. See 10 Cyc. 373 and cases cited.

### RESPONDENTS' POINTS.

The directors and other officers of a corporation are not trustees in the technical sense for the stockholders collectively, or the corporation, or its creditors, and what duties they owe, they owe to the corporation and not to the individual stockholder of the corporation, and for neglect of duty or any wrong not involving fraud or deceit, the directors are liable only to the corporation and not to the

individual stockholder.    (3 Clark & Marshall, Priv. Corps.,
sec. 747, p. 2268 and note; 3 Clark & M. Priv. Corps., sec.
747, p. 3801 and cases cited; *Briggs v. Spaulding,* 141 U.
S. 132, 147; *Holland v. Brierfield Company,* 150 U. S. 371;
*Spering's Appeal,* 71 Pa. St. 11, 10 Am. Rep. 684; *Bloom v.
National, etc. Co.,* 152 N. Y. 114, 46 N. E. 166; *Hospes v.
Northwestern Co.,* 48 Minn. 174, 50 N. W. 1117.)

When a corporation disposes of all of its property and
goes out of business, the proceeds of the property for dis-
tribution is properly called, and is, a dividend.   (2 Cook on
Corps. [4th Ed.], sec. 535, p. 992; 2 Clark & Marsh. Priv.
Corps., sec. 523, p. 1599; 1 Bouvier's Law Dict., dividend.)

The Colorado Mining Company was under no duty to see
that the 79,500 shares of stock of its company was distributed
by the Success Company to the persons entitled to receive it.

It is the party who assails the action of the board who
has the burden of showing that the law was not complied with;
it is not incumbent upon the corporation to show that the
law has been complied with.   (*Leavitt v. Mining Company,*
3 Utah, 265; *Singer v. Copper Company,* 17 Utah, 143, and
cases cited on page 155; 3 Clark and Marshall Private Corp.,
page 2090, sec. 682.)

The officers of the Success Company had the right to assume
the correctness of the books delivered to them by the former
secretary.   (*Briggs v. Spaulding,* 141 U. S. 132; *Marshall
v. Bank,* 17 Am. St. R. 84, 96; 2 Cook on Corps. [4th Ed.],
sec. 703; Spering's Appeal, 71 Pa. St. 11, 10 Am. Rep. 684;
*Dovey v. Corey,* Appeal Cases [1901], p. 477.)

McCARTY, J.

This is a suit in equity in which plaintiff seeks to be
adjudged the owner of, and entitled to have issued to him,
1,060 shares of the capital stock of the Colorado Mining
Company, a corporation organized under the laws of this
state.   Service of summons was had on Jesse Knight and the
Colorado Mining Company, each of whom filed an answer to
plaintiff's complaint.   The other defendants were not served

38 Utah—6

with process, nor did they appear in the action. A trial was had, and the court found in favor of the defendants Knight and the Colorado Company on the issues presented by the pleadings, and dismissed plaintiff's complaint for want of equity. From the judgment rendered plaintiff prosecutes this appeal.

In order to understand the points and questions involved, it is necessary to make a somewhat elaborate and detailed statement of the issues and facts. The Success Mining Company was incorporated under the laws of this state, with its general place of business in Salt Lake City. It had a capital stock of thirty thousand dollars divided into three hundred thousand shares of the par value of ten cents per share. The capital stock was all subscribed for and fully paid up by the incorporators, six in number, by the conveyance to the corporation of the Success mining claim situate in the Tintic mining district, this state. The articles of incorporation were filed December 7, 1898. There were five directors, three of whom resided at Eureka, and one at Robinson, in Juab County, Utah, and the other, Ernest Williams, who was also secretary and treasurer of the company, lived in Salt Lake City, Utah. The articles of incorporation provided that the persons therein named as officers should continue in office until the annual stockholders' meeting, and until their successors were elected and qualified. No election of officers was held until October 3, 1906, and the persons named as officers of the company in the articles of incorporation continued to be the officers of the company until that date. The company was unable to find any ore or valuable minerals in its ground, and therefore was not a financial success. There were eight assessments levied upon the capital stock. The eighth and last assessment was levied at a meeting of the board of directors held at Eureka, Juab County, February 10, 1900. This was the last meeting held by the board of directors first appointed, and with the exception of an entry made by the secretary in the minute book of the company April 14, 1900, reciting that certain stock had been sold to pay the eighth assessment levied thereon, there was

no other or further business transacted in the name of the company thereafter for a period of more than six years. There was not a single transfer of stock made on the books of the company from April 14, 1900, until May 3, 1906. And the undisputed evidence tends to show that during this time the stock had practically no market value whatever. On February 6, 1899, there was issued to plaintiff two thousand shares of the capital stock of this company represented by certificates two hundred and fifty-two and two hundred and fifty-three for one thousand shares each. On March 3, 1898, there was issued to one George W. Heintz certificate number three hundred and four for two thousand shares of said stock. About three weeks prior to the commencement of this action (March 5, 1908) Heintz assigned certificate three hundred and four to plaintiff. On April 14, 1900, there was issued to one C. E. Pearson certificate number three hundred and sixty-five for eighty-four thousand nine hundred and twenty-five shares of stock. On the stub from which the certificate was detached is listed in the handwriting of Ernest Williams, then secretary of the company, certain stock, including the four thousand shares held by plaintiff. The stock so listed was merged in certificate three hundred and sixty-five issued to Pearson. On each of the stubs from which the certificates representing this stock was taken is an indorsement or notation, made with a blue pencil and in the handwriting of the secretary, reciting that the stock was "sold at eighth sale." And on each of these stubs there is also a cross made with a blue pencil. The record book of the company, on page twenty-six, contains the following entry in the handwriting and over the signature of Williams, as secretary: "No. 8. April 14, 1900, Salt Lake City, Utah. The assessment not having been paid on the following described stock, same was sold according to law for assessment and costs." Then follows a description of the certificates, about seventy in number, representing stock alleged to have been sold, the number of the certificate, the number of shares for which it was issued, to whom issued, and the amount of the assessment for

which it was sold. The three certificates held by plaintiff are listed thereon as follows:

| Cert. | Shares. | Name. | Amount· |
|-------|---------|-------|---------|
| 252 | 1000 | M. Kimball | $10.00 |
| 253 | 1000 | do | $10.00 |
| 304 | 2000 | Geo. W. Heintz | $20.00 |

A copy of a printed notice purporting to contain a list of the certificates representing stock on which the eighth assessment had become delinquent, and which was published in one of the daily papers of Salt Lake City, with the publisher's affidavit attached thereto, was introduced in evidence by plaintiff, and was made part of the bill of exceptions. The notice did not include any of plaintiff's stock. While we think it may be fairly inferred from this that no publication of plaintiff's stock was made as required by law, yet it does not necessarily follow that, because of this, plaintiff is entitled to recover in this action. If this were a suit for the conversion of plaintiff's stock, or to compel the Success Mining Company to replace the stock and make an entry of plaintiff's ownership on the books of the company, the fact that the stock was not advertised and sold as required by law might be a controlling feature in the case. But, as we have observed, this is a suit to compel the Colorado Mining Company to issue to plaintiff one thousand and sixty shares of its stock. Therefore the fact that plaintiff may have been unlawfully deprived of his stock in the Success Mining Company by a void sale which the record shows was made, if made at all, more than eight years before the commencement of this action, is not necessarily decisive of the case. This phase of the case will be more fully discussed further along in the opinion.

Again reverting to the facts: We find that on or about May 3, 1906, the eighty-four thousand nine hundred and twenty-five shares of the stock of the Success Mining Company, represented by certificate three hundred and sixty-five issued to C. E. Pearson, were purchased from Pearson by

defendant Jesse Knight, and certificate three hundred and sixty-seven was issued for the stock, which also includes sixteen thousand and seventy-five shares that he purchased at about the same time from other parties, and recorded in his name upon the books of the company.    Defendant Knight, prior to the purchase of the Pearson stock, had had no interest in or connection with the Success Mining Company.    On October 3, 1906, in pursuance to a call theretofore made, a stockholders' meeting of the Success Mining Company was held in Salt Lake City at which a full board of directors was elected.    Jacob Evans, Lester Mangum, and defendant Jesse Knight were three of the five directors elected.    Knight (who at the time was president of the Colorado Mining Company) was made president and Mangum secretary of the company. At that meeting the following resolution was introduced and adopted by the stockholders:    "Whereas, the officers of the Success Mining Company have received a proposition in words and figures as follows, to wit:    'Pursuant to a resolution duly adopted, the Colorado Mining Company, a Utah corporation, does hereby offer the sum of fifteen thousand dollars cash, or seventy-nine thousand and five hundred shares of the treasury stock of the Colorado Mining Company, as the purchase price for the Success mining claim, U. S. lot No. 260, together with all other real and personal property owned by said Success corporation.    The Colorado Mining Company by Jesse Knight, Prest.    W. Lester Mangum, Sec'y.' And whereas, the Success Mining Company is not a financial success, and is not a going concern, and has been unable to find any ore or valuable minerals in its ground, and in order to conduct its business it has been, and will be in the future, necessary to levy and collect assessments from its stockholders.    And whereas, the stockholders are desirous of discontinuing operations of the company's property:    Now, therefore, be resolved:    That the president and secretary be, and they are thereby, authorized to accept seventy-nine thousand and five hundred shares of the treasury stock of the Colorado Mining Company, a Utah corporation, as the full purchase price for the Success mining claim, U. S. lot No.

260, together with all other real and personal property owned by this corporation, and that the president and secretary of this corporation be, and they are hereby, authorized and directed to make, execute and deliver, for and on behalf of this corporation, deeds of conveyance of all the real and personal property belonging to this corporation, and to deliver the same to the Colorado Mining Company, upon receiving for the use and benefit of this corporation seventy-nine thousand and five hundred shares of the treasury stock of the said Colorado Mining Company. And be it further resolved, that the board of directors of the Success Mining Company be and it is hereby requested, after it has received for the use and benefit of this corporation the said seventy-nine thousand and five hundred shares of the treasury stock of said Colorado Mining Company, from the sale of real and personal property of this corporation, to declare a dividend of all said treasury stock so received, and to pay the same to the stockholders of this corporation pro rata with their holdings as shown by the books of this corporation upon delivery by said stockholders to the secretary of this corporation for cancellation all their properly endorsed certificates of stock in the Success Mining Company."

In pursuance of the foregoing resolution, the president and secretary of the Success Mining Company duly conveyed to the Colorado Mining Company all the real and personal property owned by the Success Mining Company and received from the Colorado Mining Company a certificate for seventy-nine thousand five hundred shares of its stock issued in favor of the Success Mining Company. On October 18, 1906, at a meeting of the board of directors of the Success Mining Company, the following resolution was adopted. "Be it resolved, that a dividend of the seventy-nine thousand and five hundred shares of the Colorado Mining Company's stock, received as the purchase price for the company's real and personal property, be and it is hereby declared, and that the same be paid on the basis of two hundred and sixty-five shares of said Colorado company's stock for every one thousand shares of this company's stock, and that said dividend be paid

by the secretary to the stockholders of this corporation pro rata with their holdings as shown by the books of the company upon delivery by said stockholders to the secretary of this corporation for cancellation, all their endorsed certificates of stock in the Success Mining Company." The secretary of the Success Mining Company, pursuant to and in accordance with the terms of the resolution mentioned, distributed as a dividend the seventy-nine thousand and five hundred shares of the stock of the Colorado Mining Company to the stockholders of the Success Mining Company as shown by the books of the latter company. This was done by the Success Mining Company taking up and cancelling the outstanding certificates of its stock as the same were presented by its stockholders shown to be such by the records of the company, and having the Colorado Mining Company issue in lieu thereof certificates of its stock on the basis of two hundred and sixty-five shares of the Colorado for every one thousand shares of Success Mining Company's stock. Neither plaintiff nor his assignor, George W. Heintz, appeared on the books of the Success Mining Company as stockholders of the company, and no distribution of Colorado stock was made to them or either of them. The record shows that no demand was made by plaintiff for Colorado stock claimed by him until after the seventy-nine thousand and five hundred shares of Colorado stock issued to the Success Mining Company had practically all been distributed to the stockholders thereof. Plaintiff, after alleging in his complaint the corporate existence of the mining companies mentioned, and setting forth the substance of the foregoing resolutions, alleged, among other things: That the Colorado Mining Company delivered to the said Success Mining Company and its officers, "among whom were the said Jesse Knight and Lester Mangum, a certificate for seventy-nine thousand and five hundred shares of the capital stock of the Colorado Mining Company, which said certificate was made out in the name of the said Success Mining Company. . . . That the Colorado Mining Company well knew that the said Success Mining Company and its officers . . . held said stock simply as trustees for the

stockholders of the Success Mining Company legally entitled thereto. . . . That the Success Mining Company and its officers and directors have caused the stock in the Colorado Mining Company, to which this plaintiff is entitled, to be issued to some person or persons other than the plaintiff or his assigns, and to this plaintiff unknown; and that, in causing said transfer to be made, the said named officers of the Success Mining Company have been guilty of gross negligence in failing to make proper or any inquiry as to the true owner-ship of plaintiff's stock in the Success Mining Company; and, if the said officers and directors have issued the stock rightfully belonging to plaintiff to some person or persons who appear by the books, records, and papers of the said Suc-cess Mining Company to be entitled thereto, the plaintiff alleges on information and belief that the books, records, and papers of the said defendant the Success Mining Company were and are so obviously and evidently incomplete, frag-mentary, and erroneous as to give notice to the said officers and directors of the said Success Mining Company that they could not and cannot be relied upon to show the names of the true owners of the Success stock, or the number of shares held by each; . . . and the plaintiff alleges that notwith-standing the evident incompleteness, fragmentary character and error of said books, papers, and records of the said Suc-cess Mining Company, the said named defendants, the officers and directors of the said Success Mining Company, did, with-out making any effort whatever to learn the names of the true and legal stockholders in said Success Mining Company, surrender the certificate for seventy-nine thousand and five hundred shares of Colorado Mining Company's stock herein-before referred to, to the said Colorado Mining Company, and procured the issuance by the said Colorado Mining Com-pany of certificates for one thousand and sixty of said shares to which plaintiff was and is entitled, to some person or per-sons to the plaintiff unknown." Plaintiff also averred "that the value of the stock to which plaintiff is entitled, together with the dividends which have been declared thereon since the 18th day of October, 1906, is six thousand dollars," and

prayed "that he may have an accounting with the said defendants, and that, the total amount of the stock of the Colorado Mining Company, to which he is entitled, be determined by the court, and the defendants be required to issue the same to him, or that he have judgment for the value thereof." Both Knight and the Colorado Mining Company in their respective answers denied the allegations of negligence contained in plaintiff's complaint respecting the distribution of the seventy-nine thousand and five hundred shares of the Colorado stock, and as an affirmative defense set out the resolutions hereinbefore mentioned that were adopted by the Success Mining Company and upon which the plaintiff mainly predicated his right to recover in this action, and then alleged that, in pursuance of the resolutions, the secretary of the Success Mining Company duly distributed to the stockholders of record as shown by the books of the company the seventy-nine thousand and five hundred shares of the stock of the Colorado Mining Company, and that the Colorado Mining Company issued certificates of its stock to parties as directed by the Success Mining Company, and that neither plaintiff nor his assignor, George W. Heintz, appeared of record as a stockholder as shown by the books of the Success Mining Company to be the owners of any stock in the Success Mining Company.

The position taken by appellant and the contention made by him on this appeal is clearly set forth in his brief in the following language: "Thus the action of the stockholders and directors of the Success Mining Company, and the delivery to it by the Colorado Mining Company of the certificate for seventy-nine thousand and five hundred shares of the Colorado stock, made each of the stockholders in the Success Company a stockholder in the Colorado, on the basis of two hundred and sixty-five shares of Colorado for each one thousand shares of the Success held by him, and made the Success Mining Company the holder of the legal title only, in trust for its several stockholders. Therefore the duty of the Colorado Mining Company was not a duty that it owed to a stranger, or to the stockholders of some other corporation, but

was *a duty that it owed to its own stockholders,* who had recently become such by reason of this transaction." And again: "Each individual stockholder had a right to a certificate representing his pro rata proposition of the Colorado stock which he could enforce in an action at law." In support of this contention counsel for appellant have cited many authorities. While the authorities cited hold generally that it is the duty of a corporation acting through its officers, to protect the rights of its stockholders from unauthorized transfers by seeing to it that all transfers of its stock are made either by stockholders themselves or persons having authority from them, none of the cases go to the extent of holding that a corporation by a mere resolution respecting stock which it holds in another corporation and concerning the disposition of such stock makes of its individual shareholders stockholders in the corporation which issued the stock. Of the cases cited the one most favorable to appellant's contention is the case of *Geyser-Marion Gold Min. Co. v. Stark,* 106 Fed. 558, 45 C. C. A. 467, 53 L. R. A. 684. In that case the Geyser-Marion Gold Mining Company, a corporation, had issued a certificate for a number of its shares of stock to Felix J. Stark, trustee, and the books of the company showed Felix J. Stark, trustee, to be the owner of the stock. He did not own the stock but held it as trustee for his brother, Charles B. Stark. This fact, however, was not disclosed by the certificate. Felix J. Stark, without any authority from his *cestui que trust,* sold and assigned the stock to third parties by means of the signature of Felix J. Stark, trustee and appropriated the proceeds of the sale to his own use. The corporation accepted these certificates as presented by the transferees, duly canceled them, and issued new certificates to the purchasers, and made entries upon its books showing the ownership of the stock to be in the purchasers, instead of in Felix J Stark, trustee. Charles B. Stark brought suit against the corporation to compel it to enter upon its books the registry of his ownership of stock equal in amount to that of which he had been deprived by the unauthorized sale, or to pay him the value of his stock which he alleged the corporation had

negligently permitted to be transferred upon its books to third parties. The court held that the company before accepting the surrender of the certificates with an assignment from Felix J. Stark, trustee, was required to make some inquiry as to who in fact was the true owner of the stock, and, as the company had failed to make any such inquiry, it was liable to account to Charles B. Stark for the stock. It will thus be seen that the facts in the Geyser-Marion Case are entirely different from the facts in this case which in any way involve the Colorado Company. If appellant had prosecuted his case against the Success Company instead of the Colorado Company, the principles invoked in the Geyser-Marion Case, as well as those invoked in many of the other authorities cited by counsel, would be applicable, because the Success Company and not the Colorado Company was charged with the duty of distributing the seventy-nine thousand and five hundred shares of the Colorado stock to the stockholders of the Success Company, and the only duty the Colorado Company owed the Success Company and its stockholders was to distribute the seventy-nine thousand and five hundred shares as directed by the Success Company. It is admitted that this stock when issued was an asset of the Success Company and was not in any sense the individual property of its stockholders. Counsel for appellant in their reply brief say: "It was perfectly competent for the Success Mining Company, through its board of directors, to make any lawful disposition of the Colorado stock received in exchange for its assets. It might have elected to sell the stock and divide the proceeds among its stockholders. It might have elected to sell the stock and invest the proceeds in other property. It might have elected to hold the stock and collect the dividends. It might have elected to trade the stock for some other property. . . . It made an election by a formal resolution of its board of directors which it was perfectly lawful for it to make, and which could not be changed except by an action of the board equally formal." It is equally clear that the company, acting through its board of directors, could, at any time before the certificate

of seventy-nine thousand and five hundred shares of stock was surrendered to the Colorado Mining Company to be divided into the requisite number of certificates with the proper number of shares in each for the stockholders, have rescinded the resolution of October 18, 1906, declaring the stock a dividend, and made some other disposition of the stock. Therefore it necessarily follows that the resolution, without any further act on the part of the company or its officers, did not invest the individual stockholders of the Success Company with either the legal or equitable title to the stock; hence the contention that the resolution in effect made the stockholders of the Success Company stockholders in the Colorado Company is wholly untenable.  To further illustrate, suppose the Success Mining Company, instead of accepting the seventy-nine thousand and five hundred shares of Colorado stock, had passed a resolution accepting the offer of fifteen thousand dollars in cash, and in the same resolution had declared it to be a dividend to be divided among its stockholders pro rata according to "their holdings as shown by the books of the corporation;" would it be seriously contended that the Colorado Company, under such a state of facts, would owe any duty to the stockholders of the Success Company to see that the proper persons were recognized as stockholders, and that each received his proper proportion of the fifteen thousand dollars?  Certainly not.  There can be no distinction in a legal sense between the distribution of stock as a dividend and the distribution of the equivalent in money.  As stated by counsel for respondents in their brief, "the Success Company and the Colorado Company were separate and distinct corporations, and in the transaction between them it was no more the duty of the Colorado Company to see to it that the Success Company made proper distribution of the seventy-nine thousand and five hundred shares than it was the duty of the Success Company to see to it that the Colorado Company made proper use of the property it had conveyed to the Colorado Company in exchange for the seventy-nine thousand and five hundred shares of stock."  Assuming, however, but not conceding, that appellant

is right in his contention that it was the duty of the Colorado Company to use reasonable diligence to see that the stock in question was issued to stockholders of the Success Company who were entitled thereto, the facts in the case preclude him from recovering in this action.

The evidence, without conflict, shows that the seventy-nine thousand five hundred shares of Colorado stock were distributed to parties only who were stockholders of record in the Success Company as shown by the books of the company, and in compliance with the terms of the very resolution upon which appellant bases his right to recover. When a party presented for cancellation a certificate of Success mining stock and demanded in lieu thereof Colorado stock, Mr. Mangum, secretary of the Success Mining Company, who was also secretary of the Colorado Company, with the assistance of Jacob Evans, who was a director in and also the attorney for the Success Company, would examine the books, records, and papers of the Success Company, and, if these showed that the party presenting the certificate was the owner thereof, and there was no record on the books showing that the stock had been sold for assessment, the certificate would be taken up and canceled, and the party presenting it paid his pro rata share of the seventy-nine thousand five hundred shares of Colorado stock. On this point Jacob Evans testified, and his testimony is not denied, that: "We presumed the books stated the truth and facts and relied upon the books. We had only so many shares to distribute, and our books showed every share of stock was owned by stockholders as recognized by the books of the corporation, and we distributed the stock as best we could to the stockholders as the book showed." Section 330, Comp. Laws 1907, so far as material here, provides as follows: "That for the purpose of voting, and of *receiving dividends,* and of levying and collecting assessments, and wherein the corporation is otherwise interested, the holder of record, as shown by its books, shall be treated and considered as the holder in fact, and the transferee shall have no rights or claims as against the corporation until transfer thereof be made upon the

books of the corporation or a new certificate be issued to him." [Italics ours.] Therefore the stock was not only distributed in accordance with the terms of the resolution, but also in accordance with the plain provisions of the statute respecting who shall receive dividends. (Mor. Private Corps., sec. 162.) Suppose the directors and officers of the Success Company had adopted the theory of appellant, namely, that the resolution declaring the seventy-nine thousand five hundred shares of Colorado stock a dividend in effect made the stockholders in the Success Company stockholders in the Colorado Company, and had turned over to that company the books and records of the Success Company, and the Colorado Company had assumed the responsibility of distributing the stock in question, the result, as we view the case, would necessarily have been the same. What information, if any, the Colorado Company could have obtained that plaintiff was a stockholder in the Success Mining Company and entitled to a part of the dividend other than that furnished by the books and records of the company is not made to appear. Furthermore, the Success Mining Company at the time the resolution was adopted had practically ceased doing business, and had not been a going concern for more than six years. The certificates representing the four thousand shares of Success stock claimed by appellant had been issued to him and his assignor more than seven years and six months before the adoption of the resolution, and during all this time neither of them, so far as the record shows, made any investigation or inquiry whatever of the officers of the company respecting their stock or the affairs of the company. A mere inspection of the books, which they could have examined any time, would have advised them that no entry or registry of their stock had been made on the stock ledger, and that their names did not appear on any of the books or records as stockholders of the company. And it was nearly two years after the resolution declaring the seventy-nine thousand five hundred shares of Colorado stock a dividend, and after the stock had practically all been distributed, before appellant presented his certificates for

cancellation, and made a demand for his alleged pro rata share of the dividend. And, moreover, notwithstanding the alleged "incomplete and fragmentary character of the books, papers, and records of the Success Mining Company," such as they were, they showed that appellant's stock was sold for assessment in April, 1900, more than six years and six months before the adoption of the resolution. Therefore, assuming, as we have stated, that the Colorado Company was charged with the duty of distributing the seventy-nine thousand five hundred shares of its stock to the stockholders of the Success Company, under these circumstances, it could not be charged with knowledge that appellant was a stockholder in the Success Company and entitled to a part of the dividend. It necessarily follows from what we have said that, if appellant's failure to be recognized as a stockholder in the Success Company in the distribution of Colorado stock was due to negligence at all, it was due to his own indifference and inaction in the premises rather than that of the Colorado Company.

Nor do we think that Jesse Knight can be successfully charged with negligence because he failed to see to it that appellant and his assignor, George W. Heintz, received their proportion of the Colorado stock. As we have observed, the stock certificate book of the Success Mining Company shows that the stock of plaintiff and his assignor ultimately went to Knight, and shows how he obtained certificate No. 367 bearing date of May 3, 1906, which was the first certificate issued to Knight. In this certificate was merged the stock represented by certificate 365 issued to Pearson, who appeared on the books of the Success Company as a stockholder. This appeared from the stub of the stock book. The stub to certificate 365 showed that the shares of stock represented by certificates two hundred and fifty-two, two hundred and fifty-three, and three hundred and forty-four (appellant's stock) went into certificate three hundred and sixty-five; in fact, the stubs and record books show that all the shares that went into that certificate were sold for the eighth assessment. The record or minute book also con-

tained a record of the levy of the assessment and of the sale. Prior to May 3, 1906, Knight was not a stockholder in the Success Company, and had nothing whatever to do with the levying of the eighth assessment, and knew nothing of the sale, except what the books of the company disclosed. True, the notice hereinbefore mentioned of the time and place of the sale of stock under the eighth assessment as published did not include plaintiff's stock, but the record shows that no copy of this notice was with the books, papers, and files of the Success Mining Company until after the distribution of the Colorado stock was made. And we think that it may be fairly said from the evidence that none of the officers of either the Success or the Colorado Company, including Knight, knew of its existence until about the time the case was tried in the lower court. Under these circumstances, Knight was authorized in relying upon the fact that the Success Company had recognized Pearson as a stockholder, and had issued to him a certificate. And the fact that Knight, six months later, became a director and officer in the Success Company in no way affected his title to the stock, as counsel for appellant seem to contend. In 10 Cyc. 634 it is said: "Where the shares of a corporation are offered for sale by the person named in the certificate, an intending purchaser is not required to look beyond the recitals of the certificate in regard to his title or the equities of the corporation, or to suspect fraud in the issuing of the shares, where all seems fair and honest. He is not bound to examine the books of the corporation to ascertain the validity of the transfer." And on page 636 of the same work the doctrine is restated in the following language: "Where a certificate of shares, regular on its face, imparts ownership in its holder, and contains no intimation of any equities impairing such ownership or full title, whether in the corporation or in third persons, an intending purchaser is not bound to suspect fraud or infirmity of title, or to go back and search the register, but may rely upon the disclosures of the certificate." (1 Cook, Corp. [4th Ed.], sec. 367; 1 Mor. Priv. Corp., sec. 210; 19 A. & E. Enc. Law, 554;

*Mandlebaum v. North Am. Min. Co.,* 4 Mich. 465; *Scarlett & Scarlett v. Ward,* 52 N. J. Eq. 197, 27 Atl. 820; *Winter v. Montgomery Gaslight Co.,* 89 Ala. 544, 7 South. 773.) Even if Knight had made an examination of the books and records of the Success Company before purchasing the eighty-four thousand nine hundred and twenty-five shares of stock represented by certificate three hundred and sixty-five issued to Pearson, he would have found that Pearson was the stockholder of record of the stock, and that neither plaintiff nor his assignor was a stockholder of record. Therefore we have a case in which a bona fide purchaser of stock for value is not only protected by a certificate which was issued by the proper officers of the company, and in every respect regular on its face, but by the books and records of the company which show that the person named in the certificate was the stockholder of record of the stock represented by the certificate.

Counsel for appellant invite attention to the fact that no entry was made in the stock ledger of the Success Company of certificate three hundred and sixty-five issued to Pearson, and that Pearson's name does not appear thereon as a stockholder. This is referred to, if we correctly understand counsel's position, as a circumstance sufficient to put Knight upon inquiry as to the validity of the Pearson certificate. Two answers can be made to this contention. The certificate, which had been issued for more than six years, being regular upon its face, Knight had the right to assume, and to act upon the assumption, that Pearson was the true owner of the eighty-four thousand nine hundred and twenty-five shares of stock represented by the certificate, and under the well-settled rule as announced by the text-writers and declared by the courts he was not required to examine the books and records of the company to ascertain if there was any infirmity in Pearson's title to the stock; and, second, as we have stated, if Knight had examined the books, he would have found that Pearson was the stockholder of record of this particular block of stock. Moreover, the record shows

38 Utah—7

that no entry was made in the stock ledger of plaintiff's stock, nor does his name or that of his assignee appear thereon. Therefore, if this fact is evidence of infirmity of title in the one case, it must also be accepted as evidence of infirmity of title in the other. This being so, appellant is not in a position to successfully claim that this was sufficient to put Knight upon inquiry, even if he had made an examination of the books before purchasing the Pearson stock, which, under all the authorities, in view of the circumstances in this case, he was not called upon to do. But, as we have stated, this suit was not brought to recover against Knight because of any fraud or bad faith on his part in acquiring the stock; nor was it brought on the theory that either Knight or Pearson converted plaintiff's stock. The suit was brought and tried by appellant upon the theory that Knight is liable because of his negligence and dereliction as an officer of the companies mentioned in failing to see to it that plaintiff and his assignor received their proportion of the Colorado stock distributed as a dividend. Therefore the facts and circumstances under which Knight acquired his stock in the Success Company are mentioned only for the purpose of showing the good or bad faith of Knight in his acquisition of Success stock, and in the part he took as an officer of each of the companies in the transactions involved in this action. The resolution upon which appellant bases his right to recover provided "that said dividend be paid by the secretary to the stockholders of this corporation pro rata with their holdings as shown by the books of the company upon delivery by said stockholders to the secretary of this corporation for cancellation all their indorsed certificates of stock in the Success Mining Company." It will therefore be seen that no duty was imposed upon Knight by the resolution to examine and check up the books of the Success Company and to personally distribute the seventy-nine thousand, five hundred shares of Colorado stock to the persons found to be entitled thereto. If Knight had received some information before or even during the time the stock was being distributed that some one not

appearing on the books as a stockholder was, in fact, entitled to appear thereon as a stockholder, and he had failed to take the necessary steps to protect the rights of such stockholder, he might under certain circumstances be held liable to the stockholder for such failure. We have carefully examined the record in this case and fail to find any evidence tending to show negligence or bad faith on the part of Knight.

Counsel for appellant in their printed brief have with much severity denounced the action of the stockholders and officers in passing the resolutions which culminated in the transfer of the assets of the Success Company to the Colorado Company in exchange for Colorado stock. These criticisms are mainly directed against Knight, who was at the time the resolutions were adopted president, director, and the principal stockholder in each of the companies. If this were a suit in which the validity of the resolutions was assailed or called in question, there might be some justification as well as foundation for the criticisms made, and the transactions themselves would call for the closest scrutiny by the court. But, as we have repeatedly pointed out, appellant, by bringing this action and basing his right to recover upon the strength of these resolutions, has ratified them as fully as he would have done had he been present at the stockholders' meeting in which the first of the resolutions was passed and voted for its adoption. Therefore he cannot be heard to complain of the resolutions, nor of the exchange of property that was made by the companies in pursuance of the resolutions.

It has been suggested that, because Knight received the proceeds of the stock in issue, he ought to be compelled to account to plaintiff therefor. This can only be done, if done at all, on the theory that plaintiff's stock was converted, and that Knight failed to acquire title to the full eighty-four thousand, nine hundred and twenty-five shares of stock that he purchased from Pearson. We again invite attention to the fact that this is not a suit for conversion, and a finding made by a court in harmony with the suggestion that Knight should account to plaintiff for the

proceeds of this stock on that ground would be entirely outside of the issues of the case and contrary to the theory upon which the action was based.

The judgment is affirmed, with costs to respondents.

FRICK, J. (concurring).

I concur with the conclusions reached by Mr. Justice Mc-CARTY. I must confess, however, that I arrived at the conclusion that appellant cannot recover against the defendant Jesse Knight after some hesitation, and for that reason desire to add something to what has been well said by my Brother.

After mature reflection and a thorough examination of the authorities, I am forced to the conclusion that, in view of the facts and circumstances of this case, appellant never had a cause of action against the defendant Jesse Knight either in law or in equity. As appears from the undisputed facts, the stock in question was transferred by the Success Company to Pearson as having been forfeited by plaintiff and one Heintz for nonpayment of an alleged assessment levied against the stock; that the stock, in fact, was not sold for the assessment, but it was nevertheless transferred by the corporation to one Pearson, and a new certificate issued to him in place of the old certificates, which had been issued and were held by plaintiff and Heintz; that afterwards Pearson sold the stock issued to him to the defendant Knight and assigned the certificate to him, and Knight presented the same to the Success Company for transfer. The company allowed the transfer and issued to him a new certificate which was finally surrendered by Knight, and for it he received his proportion of the Colorado stock, as stated by Mr. Justice McCARTY in the opinion written by him. The plaintiff and Mr. Heintz could have treated the action of the Success Company in canceling their certificates as a conversion and could have forthwith sued that company for damages, or they could have brought an action in equity against both the company and Mr. Pearson so long as he held the stock and could have required the company to repay Mr. Pearson what he had

paid the company, and then cancel the certificate issued to him in place of plaintiff's and Mr. Heintz's certificates and have the company reinstate them as stockholders. (2 Clark & Mar. Cor., section 495; *Mitchell v. Vermont, etc., Co.,* 67 N. Y. 280.) However, after Mr. Pearson had sold the stock for value in due course of business (and there is not the slightest claim that the transfer between Pearson and Knight was not for value and in good faith, but, on the contrary, the evidence shows that it was) to Mr. Knight, and the company had issued to him a new certificate, the plaintiff, in view of the allegations contained in his complaint, and under the evidence, could not follow the stock into the hands of Mr. Knight. If the stock had been actually stolen from appellant and had been presented with the name forged, and the Success Company had transferred the same by issuing a new certificate to a third person, appellant, as the owner, could not have followed the stock into the hands of Mr. Knight if he had purchased it for value and without notice. *Machinists' Nat. Bank v. Field,* 126 Mass. 345, in principle is strictly in point. True, the action in that case was prosecuted by the corporation which had issued the stock, but it is made clear in the opinion itself that the result would have been the same if the former owner had brought the action. Such is the law, as appears from the following text-writers: In 2 Cook on Corporations (6th Ed.), section 370, the law is laid down in the following language:

"It has also been shown that he who applies to the corporation for a registry of transfer, such registry being the first one since the forgery was committed, is not allowed to retain the stock. An entirely different rule prevails as regards all subsequent bona fide holders of the new certificate obtained by the first registry. The person who obtains the first registry has no rights except as against his transferrer. But all subsequent purchasers without notice are fully protected. They cannot be compelled to give up the stock, either to the corporation or to the person who lost it by forgery."

In 3 Cl. & Mar. Cor., section 597e, the rule is stated thus: "The owner of shares which have been transferred by the corporation on its books under a forged power of attorney

has no right of action against a bona fide purchaser of the shares who purchased, not the original certificates, but a new certificate issued by the corporation." The rule that applies under the facts and circumstances just stated also applies, as we have seen, in case the corporation illegally attempts to forfeit the stock. (2 Cl. & Mar. Cor., *supra*.) This no doubt is logical, for the reason that, as against the corporation, and perhaps as against one who obtains the stock directly from the corporation in case of an illegal forfeiture, and against the person who in case of theft and forgery has the forged assignment of the original certificate, the original owner always has his choice of action either to be reinstated as a stockholder or for damages until cut off by the statute of limitations. In both the foregoing instances the corporation commits a wrong against the stockholder by interfering with his property rights, and in both the owner of the stock has his remedy as before stated. But this remedy in case of a conversion, or the unauthorized transfer of corporate stock (which is no more than a conversion), cannot be enforced as against one who obtains a new certificate from one to whom it was issued by the corporation and who holds the same for value and without notice of the wrong. Such a purchaser may rely upon the face of the certificate not only as against the corporation, but as against the former owner. The reason why a special rule is applied to the shares of stock which are transferable on the books of a corporation in case of a conversion thereof is well stated by Mr. Justice Davis of the Supreme Court of the United States in the case of *Bank v. Lanier,* 11 Wall. 377, 20 L. Ed. 172, in the following language:

"It is no less the interest of the shareholder than the public that the certificate representing his stock should be in a form to secure public confidence, for, without this, he could not negotiate it to any advantage. It is in obedience to this requirement that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they ap-

proximate to it as nearly as practicable. If we assume that the certificates in question are not different from those in general use by corporations, and the assumption is a safe one, it is easy to see why investments of this character are sought after and relied upon. No better form can be adopted to secure the purchaser that he can buy with safety."

The real claim made by the appellant is that Mr. Knight, as an officer of the Success Company, owed appellant the duty of exercising ordinary care and diligence in making distribution of the assets of the Success Company so as not to pay appellant's share to some one else. No doubt it is the duty of corporate officers to exercise reasonable diligence and ordinary care to protect the interests of the stockholders. But the court found, and the finding is sustained by sufficient evidence, that Knight was not guilty of negligence in anything that he did. But what duty did Mr. Knight owe appellant in distributing the assets of the Success Company? As we have seen, in view of the law applicable to the facts, Mr. Knight had become the lawful owner of the stock claimed by appellant long before the Success Company sold and transferred its property and received the consideration therefor which Knight assisted in distributing. Mr. Knight's name then appeared on the stock books of the Success Company as a stockholder. To this stock Mr. Knight had succeeded in due course of business. Any stockholder of the Success Company, therefore, could just as well have claimed Mr. Knight's stock as appellant. Under the facts and circumstances, Mr. Knight's right and title to the particular stock was no more assailable by appellant than by any other stockholder. This being so, Mr. Knight, in receiving his proportion of the assets of the Success Company, was simply obtaining the fruits of his purchase of the stock from Pearson—no more, no less. If appellant could not have assailed Mr. Knight's right and title to the stock, how can he attack Mr. Knight's right to share in what the stock represented, namely, a proportionate part of the assets of the Success Company? It seems to me that the right to assail

the latter must necessarily depend upon whether appellant had the right to attack the former.

The facts of this case do not constitute it one of overissue of stock which could not be made effective against anyone, except, under peculiar circumstances, the corporation issuing the same. When the stock in question was issued it was intended that it should, and it in fact did, take the place of the stock that had been issued to appellant and Heintz, and which was evidenced by the certificates held by them and which were attempted to be forfeited for nonpayment of the assessment. The stock sold to Mr. Knight, therefore, in no sense constituted overissued stock, and hence cannot be asailed on that ground. (*Kinnan v. Forty-second, etc., Co.*, 1 Misc. Rep. 457, 21 N. Y. Supp. 789-792, affirmed in 140 N. Y. 183, 35 N. E. 498.) But, if the four thousand shares of stock which were issued to Mr. Knight shall be deemed as an overissue, then there would have been issued an outstanding three hundred and four thousand instead of three hundred thousand shares of Success Company stock. Mr. Knight would thus have held such overissue all of which would have been worthless. This is clearly established because when the assets of the Success Company were divided there were only three hundred thousand shares of stock recognized and permitted to share in the division. The four thousand shares of so-called over-issued stock were thus ignored and received nothing. If nothing was awarded to the four thousand shares, then the holder thereof, Mr. Knight, obtained nothing for them, and, if he obtained nothing, he could have wronged no one. From this it follows that the four thousand shares originally owned by plaintiff and his assignor were either represented by the so-called over-issue, or by the Pearson stock, which was transferred to Mr. Knight. If the former theory be accepted as true, then the four thousand shares did not participate in the distribution, and the holder thereof received nothing for them, and, if the latter theory be correct, then Mr. Knight succeeded to the Pearson stock in the manner and under the circumstances already stated, and for the reasons heretofore

stated the plaintiff cannot follow the stock into the hands of Mr. Knight. The same reasons which afford protection to Mr. Knight also apply to the Colorado Mining Company.

This brings us back to the proposition already advanced that what was done by the Success Company and its secretary amounted to a wrongful interference with the property rights of appellant, and in law constituted a conversion of his stock. If we now permitted appellant to recover in face of the fact that Mr. Knight purchased after the new certificate had been issued to Mr. Pearson, to whom the first certificate was issued after the attempted forfeiture of appellant's stock, we would have to go contrary to all the law upon the subject. I have not been able to find any well-considered case that holds that appellant can recover under the undisputed facts and circumstances in this case, and my associate has found none.

While my inclinations have always been in favor of permitting appellant to recover as against Mr. Knight, yet these considerations are of secondary importance. As has well been said by an eminent jurist: "No one supposes that a judge is at liberty to decide with sole reference even to his strongest convictions of policy and right. His duty in general is to develop the principles which he finds with such consistency as he may be able to attain." Recognizing this duty, and applying the law as I understand it to the facts of this case, I cannot see how appellant can recover either in an action at law or in equity. In arriving at this conclusion, I place no stress upon the theory on which this action was tried in the district court. My own view is that under our Constitution and statutes a party is entitled to whatever relief his pleadings and the evidence based thereon entitle him, regardless of the theory of his counsel. True, an appellant may not by changing his theory predicate error in this court upon the rulings of the trial court which he induced that court to make, or which it made in response to his contentions, but this doctrine is not involved where a party comes into court by setting up the facts and by asking relief upon them to which he is not entitled. The fact that he may not

be entitled to what he demands is no reason why he should not receive what the law and the facts entitle him to.

For the foregoing reasons, I am of the opinion that the conclusion reached by Mr. Justice McCARTY is the only one permissible under the facts and the law applicable thereto.

STRAUP, C. J. (dissenting).

I dissent. As I view them, the essential features of the case are: The Success Mining Company was organized in 1898. Its capital stock consisted of three hundred thousand shares fully issued. Its mining claim adjoins, or is adjacent to, those of the Colorado Company. In 1899 the plaintiff and his assignor each became the owner of two thousand shares of the Success Mining Company represented by three certificates which were regularly issued and delivered to them, all of which is made to appear by the books and records of the Success Company. It was, however, alleged in the answer of the defendants that the certificates of the plaintiff and his assignor were sold for the payment of a delinquent assessment. But there is no proof of such fact. Defendants offered no evidence in support of such allegations, except an unsigned recital in one of the books of the Success Company, said to be in the handwriting of the then secretary of that company, that an assessment was levied in February, 1900, by the board of directors of the company, being assessment No. 8, and that the shares of stock of the plaintiff and his assignor were sold in April, 1900, to pay the delinquent assessment, and a notation on the stubs of the certificates issued to the plaintiff and his assignor, in blue pencil writing, also said to be in the handwriting of the then secretary of that company, "sold at the eighth sale." Upon the record it is quite apparent to me that such recitals and notation were untrue, and were made not at the time of any such purported transactions. The books of the company fail to show that any notice was given of such a meeting of the board, or that such a meeting was ever called or held, or that any such assessment was ever levied by the board. Nor is there any record of any such transaction

found in the books of the Success Company. Nor was there any proof made of such facts, or that any such transactions were had. But no matter about that, for it is conceded that the sale of plaintiff's stock and that of his assignor, if any assessment ever was levied, or if any sale ever was had, was absolutely void for want of notice and advertisement, as by law in such case provided, and that the recitals of the secretary and the notation made on the stub of the certificates by him were wrongful and without authority. It is made to appear, however, that the then secretary of the Success Company wrongfully and without authority issued to one Pearson certificates for four thousand shares of stock of the Success Company ostensibly in lieu of those owned and held by the plaintiff and his assignor. After such issue, there then were issued and outstanding three hundred and four thousand shares of capital stock of the Success Company. When the secretary issued such certificates to Pearson, either the certificates for four thousand shares owned and held by the plaintiff and his assignor became ineffectual or the certificates for four thousand shares issued to Pearson were spurious. But it is conceded that the plaintiff and his assignor never parted with, nor were divested of, any right or title in or to the four thousand shares of stock held and owned by them, and that they ever since 1899 had been, and at the time of the trial were, the undisputed owners of their four thousand shares of Success stock. And confessedly neither the absolutely void sale of their stock nor the false and wrongful notation and recitals of the secretary on the books of the company could in any manner affect their right or title in or to their stock. The certificates which were so issued to Pearson, I think, constituted an overissue of stock and were spurious. They were but so much waste paper. The holder thereof could not, and did not, become a stockholder of the Success Company by reason of them. Such certificate so issued to Pearson were thereafter acquired by Knight in January, 1906. He then was, and prior thereto had been, the president and director and the principal stockholder of the Colorado Company. Between January, 1906, and Octo-

ber, 1906, Knight acquired in all one hundred and ninety-nine thousand, eight hundred and thirty-three shares of the capital stock of the Success Company, including the certificates which had been issued to Pearson. On the 3d day of October, 1906, at a special stockholders' meeting of the Success Company, of which the plaintiff and his assignor had no notice or knowledge represented by two hundred and twenty-five thousand, two hundred and eighty-three shares of stock of which Knight then represented one hundred and seventy-six thousand, five hundred shares in person, Knight, the president and a director of the Colorado Company, was made the president and a director of the Success Company. The secretary of the Colorado Company was made the secretary of the Success Company. Members of the board of directors of the Colorado Company were made members of the board of directors of the Success Company. The members constituting a majority of the board of directors of the Colorado Company then also constituted a majority of the board of directors of the Success Company. At such meeting, and after such election of officers, a stockholder and director of both companies introduced the resolution referred to in the opinion of the majority members of the court in which it was recited that the Colorado Company had authorized its president and secretary to submit to the Success Company a proposition to purchase the Success mining claim "together with all other real and personal property owned by said Success corporation" for the sum of fifteen thousand dollars cash or seventy-nine thousand, five hundred shares of the treasury stock of the Colorado Company. In such resolution it was further recited that the Success Company was "not a financial success and is not a going concern and has been unable to find any ore or valuable minerals in its ground," and that the president and secretary of the Success Company be "authorized to accept seventy-nine thousand, five hundred shares of the treasury stock of the Colorado Company" for the Success mining claim "together with all the other real and personal property owned" by the Success Company, and that the seventy-nine thousand, five hundred shares of Colorado

stock be "declared a dividend and to pay the same to the stockholders of the Success Company pro rata with their holdings as shown on the books" of the Success Company. The resolution was adopted. The offices and books of the Success Company were thereupon removed to the offices of the Colorado Company. In accordance with such resolution Knight and Mangum, the president and secretary of the Success Company, executed deeds of conveyance conveying and transferring all the property both real and personal of the Success Company to the Colorado Company and delivered them to themselves, and duly accepted them as the president and secretary of the Colorado Company; and thereupon, as president and secretary of the Colorado Company, they isued and delivered to themselves as president and secretary of the Success Company a certificate for seventy-nine thousand, five hundred shares of the capital stock of the Colorado Company which was thereafter surrendered and cut up and delivered to shareholders of the Success Company, not including the plaintiff or his assignor, in exchange for Success stock held by them. Because on the stub book the certificates owned and held by the plaintiff and his assignor had been "blue penciled" out of existence by the old secretary of the Success Company, the plaintiff and his assignor were not regarded as stockholders "on the books" of the Success Company, and consequently were not given any notice of such stockholders' meeting, and were not permitted to participate in the distribution of the seventy-nine thousand, five hundred shares of Colorado stock in exchange for the Success stock owned and held by them. At the time of such distribution Knight held one hundred and ninety-nine thousand, eight hundred and thirty-three shares of the capital stock of the Success Company. One share of Colorado Company's stock was given for about three and eight-tenths shares of Success Company's stock. The distributive share of the seventy-nine thousand, five hundred shares of Colorado stock, which ought to have gone to the plaintiff and his assignor in exchange for the four thousand shares of Success stock owned and held by them, was given to Knight on the certificates of stock which

the old secretary of the Success Company had issued to Pearson ostensibly in lieu of those owned and held by the plaintiff and his assignor. Knight, who practically had acquired two-thirds of the capital stock of the Success Company, was the active participant and the controlling factor in the transaction, in which the resolution was passed transferring to the Colorado Company everything that the Success Company had in exchange for capital stock, and distributing the Colorado stock, not to the true and rightful owners and holders of shares of stock of the Success Company, but to those whose names appeared "on the books of the Success Company," whether true or false, and who so aided by his own resolution, was enabled to have distributed to himself the distributive shares on the spurious stock held by him which in equity and good conscience ought to have gone to the plaintiff and his assignor in exchange for the four thousand shares of genuine stock conceded to be owned and held by them.

Where one corporation transfers all its property to another corporation under an arrangement by which the stockholders of the former company exchange their stock for stock in the latter company, a consolidation and not a purchase is effected. The former corporation in such case is for all purposes outside of the winding up of its affairs defunct and in the condition of a dissolved corporation. (*Cooper v. Utah L. & Ry. Co.*, 35 Utah 570, 102 Pac. 202.) Since all of the property of the Success Company was transferred to the Colorado Company under an arrangement by which the stockholders of the former company exchanged their stock for stock in the latter company, the plaintiff and his assignor, conceded to be genuine stockholders of the former, I think, were entitled to maintain an action against the latter to compel it to issue to them the number of its shares constituting their proportion of the exchange. (*Anthony v. American Glucose Co.*, 146 N. Y. 407, 41 N. E. 23; *Fletcher v. Newark Tel. Co.*, 55 N. J. Eq. 47, 35 Atl. 903.) This is but equity.

The position taken by Knight and the Colorado Company is that notwithstanding the plaintiff and his assignor were at the time of the transfer, and of the distribution, the un-

disputed owners of four thousand shares of stock of the Success Company, and notwithstanding all the property represented by their stock was bodily transferred by Knight to the Colorado Company who received it for an exchange of capital stock, and notwithstanding the plaintiff and his assignor were not permitted to share in the distribution of such exchange, and notwithstanding the distributive share which ought to have gone to them was given to Knight on his spurious stock, nevertheless, when the plaintiff and his assignor demand an accounting and an exchange of Colorado stock for the four thousand shares of Success stock conceded to be owned and held by them, or a judgment for the value thereof, Knight and his codefendant, in defense, point to the resolution which Knight himself adopted, and assert that the exchanged stock was distributed in accordance therewith, and ask that the plaintiff and his assignor for proper relief in the premises be turned over to the remains of the lately deceased Success Company which was stripped by Knight of all it had and transferred to the Colorado Company. There is an old and familiar maxim of the law that "equity delights in justice and coverts perfection." It is apparent that, unless the plaintiff and his assignor are permitted to pursue the Colorado Company at least to the extent of the property received by it from the Success Company, or in some appropriate action the persons who transferred to the Colorado Company all that the Success company had, and who wrongfully withheld the proceeds from them, they have suffered a wrong without a remedy. Knight seems to think, and so apparently do my associates, that, inasmuch as Knight had nothing to do with the books of the Success Company or the issuing of the spurious stock, plaintiff and his assignor, in the absence of proof of negligence or actual fraud on the part of Knight and the Colorado Company, cannot be heard to complain because Knight caused to be transferred to the Colorado Company everything owned and possessed by the Success Company, and caused a resolution to be passed permitting the distributive shares of the proceeds to be given to himself on spurious stock which ought to have gone to

plaintiff and his assignor on genuine stock. True, the plaintiff had alleged that Knight and the Colorado Company were guilty of negligence in making the distribution in the particular that ordinary diligence in inspecting and looking over the books of the Success Company would have disclosed the false recitals, and that the plaintiff and his assignor were the true and lawful owners and holders of four thousand shares of capital stock of that company. There is much to justify the conclusion that the books of the Success Company were written up untruthfully, and to suit occasions, not by Knight, but by the old secretary of the Success Company, or by some one under his direction, and that ordinary inspection would have disclosed the unreliability and falsity of the books. But I think the plaintiff's case as presented lies deeper than that. Conceding that Knight had nothing to do with writing up the books or the issuance of the spurious stock, nevertheless he, the president and director, holding nearly two-thirds of the capital stock of the Success Company, cannot be permitted to justify what he did in the premises by pointing to false and unreliable books of the company. The plaintiff and his assignor were the undisputed owners of four thousand shares of Success stock. They never were divested of their title. They were the owners of such stock when the transfer and distribution were made. Neither the false and unauthorized recitals of the old secretary of the Success Company, nor the transfer of all of its property to the Colorado Company, nor the resolution of Knight and his associates distributing the exchanged stock, not to the actual and lawful holders and owners of Success stock, but to those as shown by the false recitals of the books, could in any manner divest the plaintiff and his assignor of their right and title to their stock, or the property represented thereby. And when all of the property of the Success Company was transferred to the Colorado Company under an arrangement whereby the shareholders of the former surrendered their stock for stock in the latter, thereby in law effecting a consolidation of the two companies, and leaving the former in the condition of a dissolved corporation. I see no reason

why the plaintiff and his assignor should not be permitted to look to the Colorado Company, the consolidated company, for proper relief. I think the allegations of the complaint are sufficiently broad to entitle them to such relief. But, if it were thought otherwise, there should not be an adjudication on merits, but a remanding of the cause. Because a litigant may have come into court on a wrong theory is no reason why he in equity should be denied and barred of all relief in the premises, when on the record as presented it is made to appear that he is entitled to some relief.