WENIGER v. SUCCESS MINING CO. et al. (KIMBALL et al., Interveners).

(Circuit Court of Appeals, Eighth Circuit.   September 27, 1915.)

No. 4375.   ◦

*(Syllabus by the Court.)*

1. CORPORATIONS ⬤➡108—UNAUTHORIZED ISSUANCE OF STOCK—ESTOPPEL—
CERTIFICATE.
   While a corporation may recover of the first transferee, or other pur-
chaser with notice, stock unauthorized, or issued on a stolen certificate,
or on a forged assignment, or its value, it is estopped by its certificate to
the first transferee from maintaining a suit to recover the stock, its value,
or the dividends thereon from a second transferee, who was a bona fide
purchaser for value without notice, in reliance upon its certificate to the
first transferee.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 459, 460;
Dec. Dig. ⬤➡108.]

2. CORPORATIONS ⬤➡104, 112—CERTIFICATES OF STOCK—VALIDITY—ESTOPPEL.
   Certificates of stock, while not strictly negotiable, are closely analogous
to negotiable paper, and should be sustained, in the absence of an in-
superable legal obstacle.
   Corporations and their officers, who, by the apparent legality of their
obligations, or by statements or recitals of their validity, induce inno-
cent purchasers to invest in them, are estopped from denying their le-
gality, or the truth of the representations they contain, on the ground
that in some preliminary proceedings which led to their execution, or in
their execution itself, they failed to comply with some law or rule of
action relative to the time or manner of their procedure with which they
might have lawfully complied, but which they carelessly disregarded.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 454, 464,
465; Dec. Dig. ⬤➡104, 112.]

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. EQUITY ⬤⟹3—JURISDICTION—RELIEF.

"A court of equity can act only on the conscience of a party. If he has done nothing that taints it, no demand can attach upon it, so as to give any jurisdiction."

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 7–12; Dec. Dig. ⬤⟹3.]

4. EVIDENCE ⬤⟹89—PROBATIVE EFFECT—RECEIPT OF LETTER.

The denial by an addressee that he received a letter or postal card, of the mailing of which there is positive testimony, is not conclusive, and should be carefully weighed. Such denials considered, and *held* insufficient to overcome the testimony of the mailing and the presumption of delivery.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 111; Dec. Dig.. ⬤⟹89.]

5. EQUITY ⬤⟹70—NOTICE ⬤⟹6—LACHES—IGNORANCE OF FACTS.

Ignorance which is the effect of inexcusable negligence is no excuse for laches, and knowledge of facts and circumstances which would put a person of ordinary prudence and diligence on inquiry is in the eyes of the law equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 200–203; Dec. Dig. ⬤⟹70; Notice, Cent. Dig. §§ 4–7; Dec. Dig. ⬤⟹6.]

6. CORPORATIONS ⬤⟹108—EQUITY ⬤⟹72—LACHES—ESTOPPEL—CHANGES IN SITUATION.

While mere delay for a time longer than that fixed by the analogous statute of limitations at law may not work laches, the intervention during such delay of great changes in the value of speculative property and of the rights of an innocent purchaser, and the loss, by the disappearance of an important witness, of evidence of the facts of the transactions in controversy, are ample to work the estoppel of a fatal laches.

The silence and inactivity of a stockholder of a corporation for five years after an illegal sale by his company of his stock for an unpaid assessment, and until, upon the certificate of such sale to the purchaser, an innocent purchaser has bought the stock and received a certificate to himself, and a further delay of two years before bringing suit against the second transferee, the bona fide purchaser, estops the stockholder from obtaining any relief in equity against him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 459, 460; Dec. Dig. ⬤⟹108; Equity, Cent. Dig. §§ 207, 210–220, 225, 226; Dec. Dig. ⬤⟹72.]

Appeal from the District Court of the United States for the District of Utah; J. A. Marshall, Judge.

Suit by George Weniger against the Success Mining Company and others, wherein M. Kimball and others intervened. From the decree, plaintiff and interveners appeal. Affirmed.

The appellants were the plaintiff and the interveners in a suit in equity against Jesse Knight, W. L. Mangum, Jacob Evans, and the Success Mining Company, a corporation, for the restoration to the Success Mining Company of certain stock of that corporation issued to Knight, and for the recovery by that company of the dividends that had been paid thereon. The plaintiff was, prior to 1910, the owner of 4,000 shares of stock in the Success Mining Company, which that company in April, 1900, for a failure to pay the eighth assessment thereon, sold to C. E. Pearson, to whom it issued its stock certificate for this and other stock similarly situated. The interveners comprise other owners of stock prior to 1900 and the assignees of such owners, whose stock the

company attempted to sell and certify to Pearson in the same way, and the plaintiff and these interveners will henceforth be termed the complainants, and treated as though all of them were the original owners of this stock. The certificate of this stock issued to Pearson was dated April 14, 1900, and was for 84,925 shares. It was in the usual form, and certified that he was the owner of that number of shares of stock of the Success Mining Company. Complainants claim, and this will be conceded, that 64,925 of these shares were certified to Pearson on account of the attempted sale of complainants' stock, and that on account of the failure to prove compliance with all the legal requirements this sale was irregular and illegal. More than five years after this sale, and in 1906, Jesse Knight bought this stock of Pearson, Pearson's certificate was assigned and surrendered to the company, and certificates for the stock, and for other stock which Knight had bought, sufficient in amount to make him the owner of the majority of the stock of the corporation, were issued to Knight. Thereafter, by proper corporate proceedings, he made himself, Mangum, and Evans directors of the Success Company, and by means of the votes of the stockholders and the subsequent action of these defendants as directors he caused the Success Company to sell all its property to the Colorado Mining Company, another corporation, in October, 1906, for 79,500 shares of the stock of the latter company, which was distributed as a stock dividend among the stockholders of the Success Company, so that the share thereof distributable to the stock in controversy went to Knight, and not to the owners of the stock before the attempted sale thereof for failure to pay the eighth assessment.

The complainants commenced this suit on October 17, 1910. The theory of their complaint was that the attempted sale of their stock for failure to pay the eighth assessment was void, that before that sale all the stock of the Success Company had been issued, that they remained the owners of their stock notwithstanding the attempted sale, that the 84,925 shares issued to Pearson on account of the attempted sale under the eighth assessment constituted an overissue of stock and were void, that the Success Company, and Knight, Mangum, and Evans, as directors thereof, wrongfully distributed 17,205 shares of the Colorado Company's stock, which was the share of the 79,500 shares received from that company on account of the sale of complainants' stock to Pearson, to Knight, when they ought to have distributed it to the complainants, and they pray that "the Success Mining Company have judgment against Jesse Knight and his codefendant directors, that he return and restore to the treasury of said corporation all of the Colorado mining stock which he received as and for a dividend" on the stock of the Success Company issued to Pearson on account of the attempted sale of the complainants' stock for failure to pay the eighth assessment, and bought of Pearson by Knight, and for all the dividends thereon, or that the Success Company recover the value of such Colorado Company stock and the dividends thereon, so that the Success Company may distribute to the complainants the amount so recovered.

The defendant answered, among other things, that the eighth assessment on the complainants' stock was duly levied, that complainants were notified of it, that they failed to pay it, that their stock was thereupon sold on account of that failure to C. E. Pearson in April, 1900, that Knight was a stranger to the Success Company, without stock or interest in it, that in 1906 he bought the stock issued to Pearson in reliance upon the certificate Pearson held, and paid therefor about five cents a share, without any notice of any overissue of stock, or of any other defect in the title of the stock, or in the certificate which Pearson held, that thereupon Pearson's certificate was assigned and surrendered to the company and certificates were issued to him, that it was not until after Knight had made and paid for this purchase that he, Mangum, and Evans became officers or directors of the Success Company, and that their actions, as such, were neither fraudulent nor wrongful, but lawful and just.

A large amount of evidence was introduced, the case was argued and submitted on final hearing, and the court below found for the defendants, and dismissed the suit on its merits.

E. A. Walton, of Salt Lake City, Utah (D. B. Hempstead and C. S. Patterson, both of Salt Lake City, Utah, on the brief), for appellants.

Andrew Howat, of Salt Lake City, Utah (H. R. Macmillan and Frank K. Nebeker, both of Salt Lake City, Utah, and E. E. Corfman, of Provo, Utah, on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). The argument on which counsel for the complainants seem to rely most confidently for a reversal of the decree below is that they remained owners of their original stock notwithstanding the Success Company's attempt to sell the same for a failure to pay the eighth assessment thereon, that all the authorized stock of the corporation had been issued before that sale, and that therefore the stock issued to Pearson in place of their stock was an overissue and void. But if the soundness of this contention be conceded, would the complainants be entitled to the relief they seek against the defendants Knight, Mangum, and Evans? This is a suit in equity, which the complainants have brought and based upon the right of the Success Company. They have alleged in their complaint that that company is insolvent, that it has no property but this claim against the defendants, that it is in the control of the defendants, that it is useless to apply to that company or to any of its officers to bring this suit, and the only decree they ask against the defendants is one in favor of the Success Mining Company. The stream cannot rise higher than its source, and the complainants were entitled to no decree against the defendants unless the facts of this case disclosed the right of the Success Company to like relief. That company had the jurisdiction, power, and right, by a compliance with the method of proceeding prescribed by law, to levy the eighth assessment and to sell and certify the stock of the complainants to Pearson on account of their failure to pay the assessment, and thereby to substitute the stock certified to Pearson for that originally issued to the complainants. The company attempted to do this, but failed, not for lack of power, but because it failed to comply with certain provisions of law relative to the time and manner of its procedure. Nevertheless it issued its certificate to Pearson for this stock, and therein certified that he was the owner of the 84,925 shares held by the complainants and others similarly situated before the attempted sale. The par value of this stock was 10 cents a share. It had been originally issued in exchange for the Success mining claim. That claim had never produced any ore, and none ever was discovered upon it before or since. The company and its stock had produced nothing but eight assessments. Knight owned a large interest in an adjoining claim, and with the aid of Williams, the secretary of the Success Company, he purchased a majority of the stock of that company, and among other stock, that certified to Pearson. He was a stranger to the Success Company, without stock or interest in it. He paid for this stock about 5 cents a share. The evidence leaves no doubt that Knight had no knowledge

or notice that this certificate to Pearson was for overissued stock, that it was in any degree untrue, or that there was any defect therein, or in the stock or its title.

At the time of this purchase one Williams was the secretary of the Success Company, and after Knight concluded to buy the stock of that company he negotiated with Williams to assist him in finding the stockholders and purchasing the stock, and Williams procured for him the certificate of the Pearson stock and the assignment thereof, which was surrendered to the Success Company and certificates issued to Knight therefor. Knight paid Williams about $2,500 for this stock, and counsel for the complainants argue that, because he bought the stock of Williams, Knight was not a bona fide purchaser thereof, under the rule that one dealing with an officer of a corporation in a matter in which the officer is personally interested is not a bona fide holder of corporate securities received by him from the officer in such a transaction. 1 Cook on Corporations (6th Ed.) § 293. But this case does not fall under that rule, because there is no proof that Williams ever owned the Pearson stock, because in the purchase of this stock he was not acting in any way as an officer of the corporation or for it, but in his individual capacity for Knight, and because there is no substantial evidence that Williams himself knew, or had any notice or reason to believe, that the stock described in the Pearson certificate was not genuine and valid. The books of the company contained a recital of the resolution levying the eighth assessment, although that recital was not signed by the secretary, and a notice to stockholders of the levy and of the sale of the stock if the assessment was not paid by a time there named. A witness came to testify that he mailed a notice of the assessment and sale to each stockholder, that the notice was published in a daily paper in Salt Lake City, the stubs of the stock which was attempted to be sold were marked "Sold for Assessments," and the certificate was issued to Pearson. That the rule invoked from section 293 of Cook on Corporations is inapplicable to a case in which the officer is not acting in the transaction in the twofold capacity of an officer of the corporation and an individual personally interested, and that the contention of counsel here is untenable, is well illustrated by the cases cited by Cook in support of his text. Titus v. Prest., etc., G. W. Turnpike Road, 61 N. Y. 237; Moores v. Citizens' National Bank, 111 U. S. 156, 169, 4 Sup. Ct. 345, 28 L. Ed. 385.

[1] Under the state of facts which has been recited there are many reasons why the Success Company is estopped from maintaining a suit in equity against Knight or the other defendants for the relief prayed in this action. The certificate to Pearson contained the unqualified statement of the Success Company that he was the owner of the shares of stock in the corporation therein specified. This was a statement and representation that the stock described in the certificate was not an overissue and was not void, but that it was valid stock and the certificate was made for the express purpose of inducing, and with the expectation that it would induce, strangers to purchase the stock and the certificate. A stranger did purchase them in good faith. And while a corporation may recover of the first transferee,

or other purchaser with notice, stock unauthorized or issued on a stolen certificate, or on a forged assignment, or in lieu thereof the value of such stock, it is estopped by its certificate to the first transferee from maintaining a suit to recover the stock, its value, or the dividends thereon, from a second transferee, who was a bona fide purchaser for value without notice of any defect in the title to the stock, or the certificate, in reliance upon the certificate to the first transferee. 2 Cook on Corporations (7th Ed.) §§ 367, 368, 369, 370; In re Bahia & San Francisco Ry. Co. (1868) L. R. 3 Q. B. 584, 595, 597, 598; Machinist's National Bank v. Field, 126 Mass. 345, 348; Kimball v. Success Mining Co., 38 Utah, 78, 96, 110 Pac. 872; 3 Clark and Marshall on Corporations, § 597 (e), page 1823.

[2] Again, the Success Company had the power and the right to levy the assessment upon the stock of the complainants, to sell to Pearson for their failure to pay the assessment, and to transfer and certify their stock to him. It was not beyond its corporate powers to issue a certificate for valid stock on a sale of the stock to Pearson. Its failure to make the stock valid and the certificate true as against the former stockholders and in favor of itself resulted from a failure to comply with a method of procedure which it might have pursued. Although not strictly negotiable paper, stock certificates, like county warrants, bonds, and promissory notes, are constantly and frequently sold in the open market, and are the subjects of a multitude of commercial transactions. In view of this fact, their validity, like that of negotiable paper, should be sustained, where no insuperable legal obstacle forbids. Bank v. Lanier, 11 Wall. 369, 377, 378, 20 L. Ed. 172; National City Bank v. Wagner, 216 Fed. 473, 481, 132 C. C. A. 533, 541. And corporations and their officers who, by the apparent legality of their obligations, or by statements or recitals of their validity, have induced innocent purchasers to invest in them, or on them, are estopped from denying their validity or the truth of the representations they contain, on the ground that in some preliminary proceedings which led to their execution, or in their execution itself, they failed to comply with some law or rule of action relative to the time or manner of their procedure with which they might have complied, but which they carelessly disregarded. Merchants' Bank v. State Bank, 10 Wall. 604, 644, 19 L. Ed. 1008; Speer v. Board of County Com'rs, 88 Fed. 749, 758, 32 C. C. A. 101, 111; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 27 C. C. A. 73, 86; 82 Fed. 124, 137; Town of Aurora v. Gates, 208 Fed. 101, 109, 125 C. C. A. 329, 337, L. R. A. 1915A, 910.

[3] And, finally, "a court of equity can act only on the conscience of a party; if he has done nothing that taints it, no demand can attach upon it, so as to give any jurisdiction." Boone v. Chiles, 10 Pet. 176, 210, 9 L. Ed. 388; Steinbeck v. Bon Homme Min. Co., 152 Fed. 333, 339, 81 C. C. A. 441, 447. Knight purchased Pearson's stock without knowledge or notice of any invalidity in it, in reliance upon the certificate of the Success Company that it was valid. There was nothing unjust or unfair in that act. The Success Company was thereupon and thereby estopped from maintaining that its certificate

was not true, and in view of that fact, when Knight and his codirectors, Mangum and Evans, subsequently distributed to the stockholders of the Success Company the stock dividend they had obtained from the sale of the Success mining claim, they respected the estoppel and distributed to Knight his proportion of that dividend, so that he thereafter received the cash dividends paid on his due proportion of the Colorado Mining Company's stock. There was nothing inequitable, or unjust, or unfair to the Success Company, nothing to taint the conscience of Knight, or Mangum, or Evans in any of these acts; there was no fraud, or deceit, or misrepresentation, or wrong, and the Success Company never had any cause of action in equity against them. And as the complainants' suit is in the right of action of the corporation, and the corporation has no such right, the complainants cannot maintain this suit, and it was rightly dismissed.

Although by their pleadings the complainants limited their suit to the right of action of the Success Company, their counsel have contended in argument and brief for the individual rights of the complainants to recover of Knight and his codirectors. An exhaustive examination of the record and thoughtful deliberation, however, have satisfied that they could not have succeeded any better if they had sued in their own rights. While they counted on the distribution in 1906 by the defendants as directors of the Success Company to Knight of the share of the Colorado Company's stock and its dividends which pertained to the stock in the Success Company originally owned by them, and which the Success Company was estopped, as we have seen, from denying to Knight, that was not the act, nor were the defendants the wrongdoers, that caused the complainants to be deprived of the benefit of their stock. That act was the illegal sale of their stock to Pearson in April, 1900, and the Success Company was the wrongdoer.' Their cause of action arose at the time of that sale. They could then, at their option, have maintained a suit against the Success Company, and Pearson, if he had notice of the illegality of the sale, to cancel the sale and certificate to him, and to reinstate their stock, or an action for damages against the Success Company for its unlawful sale. They took no action whatever, and the attempted sale of their stock, the certificate to Pearson, and their inactivity naturally and logically resulted in the purchase in 1906 of that certificate and the stock it described by Knight, and the subsequent distribution to him in that year of the share of the Colorado Company's stock due to the stock in controversy.

Suppose that the complainants were legally entitled to receive from the Success Company the dividend of the Colorado Company's stock pertaining to the Success Company's stock in controversy; could the complainants have maintained a suit in equity to compel Knight and his codirectors to assign it to them, or an action against them for damages for their failure to do so after the complainants had remained silent and inactive from that sale in April, 1900, until after Knight in 1906 had bought and paid for the stock certified to Pearson in reliance upon his certificate? The Success Mining Company was incorporated in December, 1898, with a capital stock of $30,000, di-

vided into 300,000 shares, of the par value of 10 cents each, and this stock was paid for by the conveyance to the Success Company of the Success mining claim. No valuable ore had ever been discovered on that claim, and none has ever been discovered since. The only value of the claim was in the possibility that ore might be discovered and the possibility that some one might believe that such ore would be discovered and buy it in that hope. The entire 300,000 shares were issued before the eighth assessment was made. When the mining claim had been conveyed to the Success Company for its stock, that company had no means of paying salaries of its officers and employés, or any expenses of operation, or of prospecting for or developing ore, except by levying and collecting assessments upon its stock. The only business it ever conducted was making assessments, collecting those assessments, expending the moneys thus obtained, and incidentally selling the stock of those who failed to pay, to any one who would buy it, and it abandoned that occupation in 1900. Sales of stocks of those who failed to pay their assessments were made on the second assessment on March 11, 1899, on the third on April 10, 1899, on the fourth on May 15, 1899, on the fifth on June 10, 1899, on the sixth on July 26, 1899, on the seventh on November 11, 1899, and on the eighth on April 14, 1900. The number of delinquents increased from one on the second assessment to 66 on the eighth.

Williams, who was the secretary and treasurer of the Success Company until after it sold its mining claim on October 3, 1906, to the Colorado Company, and who conducted the proceedings for the assessments and sales, left Utah a few weeks after October 3, 1906, and was unavailable as a witness in this case at the hearing. But among the old records of the Success Company there was found an affidavit of publication of a notice of the eighth assessment, and of the delinquent sale on April 14, 1900, of any stock on which the assessment should not be paid on or before March 17, 1900, and it was admitted that this notice was published in the daily issue of the Salt Lake Herald for 30 consecutive issues, commencing February 13, 1900. It was also admitted that a similar notice of the fifth, sixth, and seventh assessments, and of the delinquent sales thereunder, was published in the daily issues of the same paper in like manner. Mr. Woodruff was an assistant to Williams, the secretary, and he testified that he personally mailed to each of the stockholders of the Success Company whose names appeared on the books of that company, and also to the party who paid the last preceding assessment on the stock, a copy of the notice of the eighth assessment, and of the sale for a failure to pay that assessment, that he did this himself, and that he had prior to that time mailed a similar notice of each of the preceding assessments and sales to the same parties. After the eighth assessment, and the sale thereunder in April, 1900, nothing was done by the Success Company until after Knight purchased a majority of its stock in 1906. Then its property was sold to the Colorado Company. Prior to Knight's offer in the spring or summer of 1906 to buy its stock for about 5 cents per share, that stock had no market value, and its prop-

erty had no intrinsic value. During the year after the purchase of the Success Company mining claim, the year 1907, Knight and his associates in the Colorado Company developed and mined ore on some of the property it held prior to the purchase of the Success claim, and the Colorado Company commenced to pay dividends, and its stock, which had previously been worth about 20 cents per share, rose in value to several dollars per share, and between May 9, 1907, and June 25, 1911, dividends were paid on it to the amount of $2.45 per share. Although most of the complainants paid the first seven assessments, of which, according to the testimony of Mr. Woodruff, they received the same notice that they did of the eighth, they did not pay the eighth assessment, with the single exception of Mr. Kimball, and thenceforth they made no inquiry concerning and did nothing with their stock, or their company, until after the sale of the Success mining claim to the Colorado Company on October 3, 1906, and they failed to institute this suit until October 17, 1910, more than 10 years after the attempted sale of their stock to Pearson, and about 4 years after the distribution of the stock of the Colorado Company to the stockholders of the Success Company.

[4] The rule for the application of the doctrine of laches to suits in equity was stated by this court in Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21, and has been often repeated. The delay of the complainants in bringing suit is far beyond any allowed by the analogous statute of limitations at law. The excuses which they make for that delay are: (1) That they received no notice of the eighth assessment, or of the sale thereunder, until after October 3, 1906, when the sale to the Colorado Company was made; (2) that, while their delay has been great, mere delay is not sufficient to constitute the indispensable estoppel of fatal laches, and no such changes of position, situation, or of value have accrued meanwhile as will effect it; (3) that inasmuch as Knight has received $2.45 in dividends on the stock of the Colorado Company no injustice will be done him by requiring him to pay to the complainants the value of the 17,025 shares of such stock which he received in exchange for the stock of the complainants sold to Pearson and bought by himself and the dividends thereon; and (4) that the complainants commenced futile suits for relief in 1908. It is conceded that the futile suits of the complainants for relief which they brought in 1908 released them from any charge of laches between that time and the commencement of this suit. Are the defendants relieved of the charge of laches by their failure to receive notice of the eighth assessment or of the sale thereunder? They have testified with varying degrees of positiveness, some that they never received any notice of that assessment or of the sale thereunder until after October 3, 1906, some that they paid all the assessments of which they received notice, some that they do not recollect receiving any notice of the eighth assessment or the sale under it, and some that they are uncertain whether they received such notice or not. No doubt each of them testified to that which he believed to be the truth, and correctly gave his recollection or his lack of it. But they testified more than 10 years after the event, without note or memorandum

made at the time, concerning an ordinary occurrence, for they had received notices of seven assessments, and had paid most of them within a year, and the unaided memory of man is notably inaccurate after 10 years on such a question as whether or not he received notice of seven òr eight successive assessments and sales.

On the other hand, Mr. Woodruff had the record largely written by himself, of, the resolutions making the levies of the assessments, he had the printed and published notice of the eighth assessment and of the contemplated sale thereunder, he had a copy thereof on a postal card attached to one of the books of the company, and the fact was that it was an important part of his duty to correctly mail those notices to the stockholders. These facts, the fact that he would not be likely to forget a uniform method of giving the notices, his positive testimony that he used the same method in giving notice of each of the eight assessments and of, each of the sales thereunder, and that he mailed notices of the eighth assessment and of the delinquent sale thereunder to each of the stockholders, have persuaded that it is more probable that those notices were mailed to and received by the complainants, and forgotten by them, than that Mr. Woodruff was mistaken in his testimony. The complainants concede that they received notices of the previous assessments, which he testified he mailed to them, and that fact lends support to the probability that they also received the notices of the eighth assessment and of the sale thereunder, which he testified he sent in the same way. The denial of an addressee that he received a letter or postal card, of the mailing of which there is positive evidence, is not conclusive, and should be carefully weighed. In re Imperial Land Co. of Marseilles, L. R. 15 Eq. Cas. 18, 23, 42 L. J. Ch. 372, 377; In Matter of Wiltse, 5 Misc. Rep. 105, 25 N. Y. Supp. 733, 736, 737; Davidson S. S. Co. v. United States, 142 Fed. 315, 318, 73 C. C. A. 425.

[5] Moreover, these complainants knew that they had stock in the Success Company, that their stock was assessable, and for a failure to pay the assessment salable by that company. It was their company, and by owning stock in it they had empowered it to make such assessments and sales. They knew that it had made seven such assessments within a year, that assessments upon their stock were with it the order of the day, and that it was by means of such assessments alone that it obtained the money for the expenses of its operations. The notice of the eighth assessment and of the sale for its nonpayment was published daily for 30 days in a newspaper in Salt Lake City, and even if complainants never received the postal card notice they may not escape the legal conclusion from these facts that they had notice of that assessment and sale. For ignorance which is the effect of inexcusable negligence is no excuse for laches, and knowledge of facts and circumstances which would put a person of ordinary prudence and diligence on inquiry is, in the eyes of the law, equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose. "Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such an inquiry might have led. When a person has sufficient information

to lead him to a fact, he shall be deemed conversant of it." Kennedy v. Green, 3 Mylne & Keen, 699, 719, 722; Wood v. Carpenter, 101 U. S. 135, 141, 25 L. Ed. 807; Swift v. Smith, 79 Fed. 709, 713, 25 C. C. A. 154, 158, and cases there cited; Wetzel v. Minnesota Railway Transfer Co., 12 C. C. A. 490, 65 Fed. 23; Percy v. Cockrill, 53 Fed. 872, 875, 4 C. C. A. 73, 76; Metropolitan Bank v. St. Louis Dispatch Co., 149 U. S. 436, 451, 13 Sup. Ct. 944, 37 L. Ed. 799; Felix v. Patrick, 145 U. S. 317, 330, 331, 12 Sup. Ct. 862, 36 L. Ed. 719. "If, a person be ignorant of his interest in a certain transaction, no negligence is imputable to him for failing to inform himself of his rights; but if he is aware of his interest, and knows that proceedings are pending the result of which may be prejudicial to him, he is bound to look into such proceedings so far as to see that no action is taken to his detriment." And a party must be held to have notice of such facts as he would readily have ascertained had he used ordinary diligence. Foster v. Mansfield, Coldwater, etc., R. R., 146 U. S. 88, 99, 13 Sup. Ct. 28, 32, 36 L. Ed. 899.

The complainants knew of their interest, they knew the Success Company was operating under assessments of its stock and sales therefor, they knew there had been seven such assessments in the first years of the corporation, the books of the corporation which disclosed the notice of the sale of their stock and the illegal sale itself in April, 1900, were open to them, and an examination of these books or inquiry of the secretary of their company would have disclosed the illegal sale. Their knowledge of their ownership of their stock, of the method of operation of their company by assessment, of the fact that seven assessments had been made within a year prior to 1900, and of the fact that from that time until 1906, when Knight bought, no assessments were made by it, and nothing was said regarding their stock, constitute ample notice that proceedings were pending in their company which might be prejudicial to them, and constitute sufficient notice to them to put a person of ordinary prudence and diligence on inquiry as to the action of their company with reference to the assessment of their stock during the years following 1899 which a reasonably diligent inquiry would have disclosed.

[6] Counsel next invoke the rule that mere delay does not work the estoppel necessary to constitute laches, and that no such changes of position and of value as are required so to do have occurred. But between the year 1900 and the year 1908 the stranger to the company, Knight, became a bona fide purchaser for value of the stock certified by the Success Company to Pearson on the illegal sale, the Success Company became estopped from avoiding the certificate and transfer of this stock to Knight, the value of the stock of the Colorado Company received for the property of the Success Company became several times as great as it was in 1906, when that company purchased the property of the Success Company, and Williams, the secretary and treasurer of the latter company, disappeared, so that his knowledge and testimony concerning the transactions were unavailable. Here were great changes in the value of speculative property, the intervention of the rights of an innocent purchaser, the loss of important evidence

of the facts of the transactions, the very things which, combined with delay, work the estoppel of fatal laches. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21; Steinbeck v. Bon Homme Mining Co., 152 Fed. 333, 345, 81 C. C. A. 441, 453.

Charged, as the facts and the law of the case convince they were, with notice of the sale to Pearson, and vested, as they were, with the right to avoid that sale until Pearson sold his certificate and the stock it described to Knight, it was the duty of the complainants to bring their suit to avoid that sale to Pearson before a stranger purchased his stock in reliance upon his certificate if they would protect themselves against a bona fide purchaser thereof. A stockholder having notice of the illegal sale of the stock to a third party by his corporation for an assessment thereon is estopped from any relief in equity or at law against a bona fide purchaser from the purchaser at the assessment sale in reliance upon the latter's stock certificate by his silence and failure to take any legal proceedings to avoid the assessment sale for more than five years and until the bona fide purchaser has paid for the stock, surrendered the certificate, and received a new certificate from the company to himself. Curtis v. Lakin, 94 Fed. 251, 254, 256, 36 C. C. A. 222, 225, 227; Rabe v. Dunlap, 51 N. J. Eq. 40, 47, 48, 25 Atl. 959, 962; Kent v. Quicksilver Mining Co., 78 N. Y. 159, 187, 188.

Finally, counsel invoke the maxim that laches is a rule of equity, and that it will not be applied to work injustice, and argue that the complainants may recover of Knight the 17,025 shares in stock of the Colorado Company, or the value thereof and dividends thereon, without loss or injustice to Knight, and that the refusal to grant this relief would be inequitable. Let us see. Where equities are equal, a chancellor may grant no relief; and where one of two innocent parties must suffer from the fault of a third, he must sustain the loss who put it in the power of the third to occasion it. The complainants by their purchase and ownership of their stock put it in the power of their company, the Success Company, to make the illegal sale of their stock, to issue the certificate to Pearson, and thereby to make the false representation that he owned their stock, which induced the stranger, Knight, to buy and pay about $2,500 therefor. The complainants, therefore, rather than Knight and his codefendants, who acted upon the certificate to Pearson and to Knight, should bear the loss rather than the defendants.

In April, 1906, when complainants' stock was sold to Pearson, it had no intrinsic and no market value, and the Success Company had no property of any intrinsic value. The complainants never expended any money, bestowed any fruitful thought or labor, or took any action whereby the market value of that stock, or of the property of the Success Company, was enhanced. Knight and his associates were the owners of the stock of the Colorado Company and controlled its action. He bought and paid about $2,500 for the stock of the complainants which their company had certified belonged to Pearson. He bought other stock of the Success Company, until he owned the majority of it. He then caused the Success Company to sell its property,

which was actually worthless, but which he then thought might contain some ore, to the Colorado Company for shares of its stock which he and his associates in the Colorado Company furnished, and thereafter by his and their energy, ability, and industry, they developed valuable ore in the prior holdings of the Colorado Company, which enhanced the value of its stock, and in the course of five years enabled it to pay $2.45 per share in dividends. During all this time the complainants planned nothing, expended nothing, did nothing, to make the worthless stock of the Success Company valuable, or to enhance the value of the stock of the Colorado Company. Knight bought the stock of the Success Company, certified to Pearson in good faith. He and his codefendants were guilty of no fraud or wrong. It would be inequitable to take from Knight, or from his associates, and turn over to the complainants, the fruits of Knight's endeavors, honestly earned, to which the silence, inactivity, and inattention of the complainants contributed nothing, to permit the representation of their company that it had sold their stock to Pearson to remain outstanding five years, and finally to induce Knight to buy the stock from him and then to take it from him. There is no equity in the case of the complainants, and they are entitled to no relief.

The fact that Mr. Kimball paid the eighth assessment has not been overlooked. Much that has been said of the complainants was not intended to apply, and is inapplicable, to him. But because, by his ownership of stock in the Success Company, and by his silence, inattention, and inactivity from April 14, 1900, until 1906, he placed and left it in the power of his company to induce Knight to buy his stock by its certificate of Pearson's ownership of it, and because he said and did nothing to make that stock, or the stock of the Colorado Company, valuable, while Knight and his associates by their energy and industry greatly enhanced their value, his equities are inferior to those of the defendants, and his case must suffer the fate of the cases of his cocomplainants.

The decree of the court was right, and it is affirmed.