# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3746

_____

Greater St. Louis Construction Laborers Welfare Fund, an employee benefit plan; Brandon Flinn; Raymond Linehan; Pasquale Lopiccolo; Gary Elliott; David Gillick; James Moll; Tom Daniels; Jeff Schmidt; Adam Knoebel; Jay Schultehenrich; Charles Bean; Norman Merlo, Trustees of the Greater St. Louis Construction Laborers Welfare Fund; Construction Laborers Pension Trust of Greater St. Louis, an employee benefit plan; Joseph Beetz; Richard McLaughlin; Jeffrey O'Connell; Don Willey; Gary Elliott; William Luth; Donald Grant; Joseph Leritz; Robert Fritz; Jay Schultehenrich, Trustees of the Construction Laborers Pension Trust of Greater St. Louis; St. Louis Vacation Fund - Vacation Plan, an employee benefit plan; Gary Elliott; Brandon Flinn; Jay Schultehenrich; Norman Merlo; William Luth, Trustees of the St. Louis Vacation Fund - Vacation Plan; AGC - Eastern Missouri Laborers Joint Training Fund, an employee benefit plan; Larry Bloomer; Don Willey; Perri Pryor; Gary Elliott; Richard McGuire; Brandon Flinn; John B. Morgan; Phil Hocher; Robert J. Wesolich; Francis R. Wojehowski; Cliff Land; John J. Smith, Sr., Trustees of the AGC-Eastern Missouri Laborers' Joint Training Fund; Local Union Nos. 42-53-110 Laborers International Union of North America AFL-CIO, labor organizations

*Plaintiffs - Appellees*

v.

Park-Mark, Inc., a Missouri corporation

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 19, 2012
Filed: November 23, 2012
_____

Before BYE, GRUENDER, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

The Greater St. Louis Construction Laborers Welfare Fund along with several other employee benefit funds and their trustees (collectively, "the Funds"), brought this action to recover delinquent payments from Park-Mark, Inc. under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Park-Mark contends that it should not be liable for these delinquent payments because it mistakenly made significant overpayments that require a set-off and a refund. The district court[1] granted summary judgment in favor of the Funds. We affirm.

I.

Park-Mark is a Missouri corporation that paints stripes on parking lots and roads in Missouri and Illinois. In October 2001, Park-Mark agreed to be bound by a collective-bargaining agreement ("CBA") with the Eastern Missouri Laborers' District Council and all subsequent CBAs. The CBA required Park-Mark to make monthly contributions based on the hours worked by covered employees to the Greater St. Louis Construction Laborers Welfare Funds, the Construction Laborers Pension Trust of Greater St. Louis, the St. Louis Vacation Fund, and the Eastern Missouri Joint Training Fund. The Funds are employee welfare benefit plans organized pursuant to ERISA that provide health insurance coverage and retirement benefits.

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

Park-Mark and the Funds have been involved in litigation for several years relating to separate disputes. In February 2010, counsel for the Funds notified Park-Mark that an internal audit revealed that Park-Mark had made overpayments to the Funds during the period of April 1, 2004, through September 30, 2009. Then, in November 2010, the Funds' accounting firm determined that the overpayments totaled $548,257.39. Park-Mark had made payments to the Funds for hours worked by its employees that were not performed in the jurisdiction of the CBA. Park-Mark stopped making payments to the Funds from October 2010 through December 2010 because the Funds did not provide credit for the overpayments.

As a result, the Funds brought this action for missing payments from September 1, 2010, forward and untimely contributions made between October 2008 and August 2010, pursuant to 29 U.S.C. § 1132(g)(2). Park-Mark answered the complaint, asserting as an affirmative defense that a set-off should be applied to any damages awarded the Funds and that any excess be remitted to Park-Mark. Park-Mark later amended its answer to include a counterclaim for restitution, specifically seeking overpayments it had made to the Funds.

The Funds moved for summary judgment, and the district court granted their motion. The district court recognized that a federal common-law cause of action exists for overpayments mistakenly made under ERISA. Applying a variety of equitable factors to Park-Mark's set-off defense, the district court held the principles of equity did not demand a refund, but the court did not address Park-Mark's counterclaim for restitution. Park-Mark then moved the district court to reconsider its order granting summary judgment, arguing the court (1) disposed of Park-Mark's counterclaim for restitution without the parties raising the issue and (2) misapplied the law with respect to Park-Mark's set-off defense. After the Funds responded, the district court denied the motion to reconsider, holding Park-Mark failed to file a formal pleading constituting a counterclaim. Additionally, the district court reasoned

that even if Park-Mark had raised such a claim, it fully addressed the counterclaim for restitution by analyzing Park-Mark's set-off defense.  Park-Mark now appeals.

## II.

Park-Mark raises two points on appeal.  First, Park-Mark contends that the district court erred by dismissing its counterclaim when the claim was not raised by either party.  Second, Park-Mark argues that the district court erred by holding that equity did not favor a set-off or restitution.  Considering each point in turn, we review de novo the district court's grant of summary judgment.  See Hackett v. Standard Ins. Co., 559 F.3d 825, 829 (8th Cir. 2009).

## A.

First, Park-Mark contends the district court erred by dismissing its counterclaim for restitution because the counterclaim was not properly before the district court.  A trial court's determination that a claim is ripe for summary judgment is reviewed for an abuse of discretion.  Crowell v. Campbell Soup Co., 264 F.3d 756, 760 (8th Cir. 2001).  Generally, a court "does not abuse its discretion by granting summary judgment on the record before it if the party opposing summary judgment seeks neither a continuance nor further discovery."  Id.

In this case, the district court did not abuse its discretion.[2]  Park-Mark neither requested a continuance, nor sought to have the discovery deadline extended.  Indeed,

_____

[2]The district court incorrectly found in its motion for reconsideration that Park-Mark failed to file any formal pleading which constituted a counterclaim.  In fact, Park-Mark filed an amended answer on April 6, 2012, that included a counterclaim for restitution.  Although the district court's finding that Park-Mark had not filed a counterclaim was inaccurate, it does not affect the outcome of the case for the reasons explained above.

the discovery deadline had passed when the district court granted summary judgment in favor of the Funds. Additionally, Park-Mark's affirmative defense sought a set-off against any damages recovered by the Funds and also requested that overpayments in excess of the amount owed to the Funds be remitted to Park-Mark. The legal and factual analysis for the set-off defense and the counterclaim are the same; each requires the court to determine if a return of overpayments is permitted and then if it is equitable. The district court's analysis of the set-off defense in its order granting summary judgment would necessarily dispose of Park-Mark's restitution claim. Park-Mark does not refute this. Therefore, the issue was fully briefed and presented to the district court because it involved the same issues as the set-off defense which was the focus of the district court's order. As a result, the district court did not abuse its discretion by holding that its initial order granting summary judgment disposed of Park-Mark's claim for restitution.

## B.

Park-Mark argues on appeal that (1) the district court incorrectly dismissed Park-Mark's set-off defense and (2) if the district court had reached Park-Mark's restitution claim, it would have held Park-Mark was entitled to a refund. Because each claim requires the same legal and factual analysis, we consider them together. We must first determine if Park-Mark was entitled to bring a federal common-law cause of action for a mistaken payment, and if so, whether equity favors a repayment.

We review a district court's grant of summary judgment de novo and we will affirm the grant of summary judgement "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment must do more than allege that some factual dispute exists; it must present a genuine issue of material fact. Quinn v. St. Louis Cnty., 653 F.3d 745, 751 (8th Cir. 2011). A nonmoving party "must come forward with specific facts showing that there is a genuine issue for

trial." Conseco Life Ins. Co. v. Williams, 620 F.3d 902, 910 (8th Cir. 2010) (internal quotation marks omitted); see also Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999) (holding a party opposing summary judgment may not rest on allegations or denials).

Park-Mark contends it made overpayments in the amount of $548,257.39, based on a report prepared by the Funds's accountants, and the Funds conceded that overpayments were made for the purposes of the motion for summary judgment. Under ERISA, contributions made by a mistake of law or fact may be returned "within 6 months after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C § 1103(c)(2)(A)(ii). This Court has joined other circuits by holding that "an employer has a federal common law action for restitution of mistakenly made payments to an ERISA plan." Young Am., Inc. v. Union Cent. Life Ins. Co., 101 F.3d 546, 548 (8th Cir. 1996).

Park-Mark properly asserted the first prerequisite in asserting a federal common-law claim for restitution by alleging it made a mistake of law or fact in contributing to the Funds or, at the very least, sufficiently alleged a material dispute existed. However, the Funds contend that Park-Mark has not sufficiently supported these allegations with facts to demonstrate that the overpayments were made by a mistake of fact or law. Michael Solomon, Park-Mark's president, stated in an affidavit that the company made the overpayments to the Funds based on the mistaken belief that it was required to make contributions for all hours worked under the CBA, including for the hours worked out of the CBA's jurisdiction. The Administrative Manager of one of the Funds, Bernard Difani, stated in his second affidavit that the Funds' accountants concluded that Park-Mark had made payments for hours worked outside the jurisdiction of the CBA, and for other work for which the CBA did not require contributions. Based on the affidavits of Solomon and Difani, evidence exists that Park-Mark made overpayments under an erroneous legal or factual understanding.

Even though overpayments were made, a refund is not automatic. Rather, Park-Mark must demonstrate that restitution is equitable. This Court in <u>Young America</u> held that restitution will be granted if the remedy is "equitable under the circumstances," referencing factors developed by the Seventh Circuit. <u>Id.</u> (citing <u>UIU Severance Pay Trust Fund v. Local Union No. 18-U</u>, 998 F.2d 509, 513 (7th Cir. 1993)). In <u>UIU Severance Fund</u>, the court listed the following non-exclusive factors for analyzing if restitution is equitable:

> (1) are unauthorized contributions the sort of mistaken payments that equity demands be refunded? (2) has the Union delayed bringing this action for so long that laches, or some other equitable defense, bars recovery? (3) in the same vein, has the Union, by continuing the payments for years without apparent question, somehow ratified past payments? and (4) since the Fund has agreed that it is not entitled to keep the disputed amount in any event, can the Union demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied?

<u>UIU Severance Fund</u>, 998 F.2d at 513 (internal footnote omitted). Also, a fund's policies cannot be arbitrary and capricious, including the decision not to refund mistakenly made payments. See Young Am., 101 F.3d at 549.[3]

---

[3]Park-Mark contends the district court misapplied the law, arguing that the standard applied to ERISA claims in other courts supports a refund. <u>See, e.g.</u>, <u>Whitworth Bros. Storage Co. v. Cent. States Se. & Sw. Areas Pension Fund</u>, 982 F.2d 1006, 1016 (6th Cir. 1993) ("A pension fund's refusal to refund contributions paid by mistake is arbitrary unless necessary to the financial soundness of the plan or justified by some other compelling reason."). Although a "'sister circuit's reasoned decision deserves great weight and precedential value,'" <u>United States v. Auginash</u>, 266 F.3d 781, 784 (8th Cir. 2001), we decline to expand our holding in <u>Young America</u> outside of the framework articulated in that case.

Applying these equitable factors to this case, we first consider if the overpayments are the sort of mistaken payments that equity demands refunded. Restitution is inequitable where a payor "obtained a benefit that he intends to retain from the payment" made, but now seeks to have the payment returned. Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Const. Corp., 258 F.3d 645, 651 (7th Cir. 2001) (citing other cases holding the same). Overpayments may be "tied to higher pension and welfare benefits for the defendant's employees." Id. Insurance and pension benefits are contingent and deferred, respectively, so although there is no immediate receipt, an employer may receive an immediate benefit because the greater pension and welfare benefits reduce the employees' demands for higher wages. Id. at 651-52.

The Funds presented evidence that Park-Mark employees received insurance-coverage benefits and pension benefits reflecting the greater overpayments made by Park-Mark. One of the Funds' administrators, Bernard Difani, stated in his second affidavit that all of Park-Mark's CBA contributions, including overpayments, benefitted Park-Mark's employees through health insurance coverage and pension contributions. Additionally, Difani stated that if the overpayments were returned, the Funds would be required to deduct pension credits from Park-Mark's employees that were based on the overpayments.

After the Funds presented this evidence, Park-Mark did nothing to rehabilitate its attacked assertions, nor did it offer additional evidence or seek further discovery. Park-Mark now argues through unsupported hypotheticals that the payments it made to the Funds did not necessarily constitute a benefit.[4] Aside from one e-mail and the

_____

[4]On appeal and for the first time, Park-Mark argues specific sections of the CBA raise an issue of material fact that not all overpayments were received as benefits by its employees. Specifically, Park-Mark contends that section 5.06, Training and Apprentice, and section 5.07, Site Advancement Fund, indicate that Park-Mark employees may not have received benefits from the overpayments made

-8-

accountant's report, the only other evidence that Park-Mark presented to the district court was the affidavit of its president. Ultimately, Park-Mark presented insufficient evidence to refute the Funds' proof that refunding the overpayment would adversely affect Park-Mark's employees. See Conseco, 620 F.3d at 910 (holding summary judgment proper where party failed to provide "some relevant evidence" to dispute the facts presented).

The second factor to consider is if an equitable defense exists due to a delay in bringing the claim. See UIU Severance Fund, 998 F.2d at 513. "Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 602 (8th Cir. 1999). Not only have the parties been involved in ongoing litigation for a period of years, but Park-Mark agrees that it began making overpayments in 2004. Park-Mark argues that it did not learn of the overpayments until February 2010 when the mistake was discovered by the Funds' accountants. This factor still weighs in favor of the Funds, however, because the CBA outlines when payments should be made by unambiguously defining the scope of the CBA's jurisdiction. Park-Mark's delay in bringing the claim was inexcusable, and has prejudiced the Funds who are placed in the position of attempting to unwind six years of payments by trying to calculate whether Park-Mark's employees truly received benefits from the payments. See Weniger v. Success Mining Co., 227 F. 548, 557 (8th Cir. 1915) ("[I]gnorance which is the effect of inexcusable negligence is no excuse for laches . . . ."). Therefore, we conclude this equitable factor favors the Funds.

---

to the Funds. Because we do not consider an argument first raised on appeal unless a "manifest injustice" would result, we decline to address this argument. See Henning v. Mainstreet Bank, 538 F.3d 975, 979 (8th Cir. 2008) (internal quotation marks omitted).

Third, a refund may be inequitable if a company's continued, unquestioned payment over a period of years ratified the previous payments. See id. In UIU Severance, a business representative for a union increased the contribution levels the union was making to his benefit plan, and the union argued that these additional payments were a "rogue act" taken without authorization. Id. at 511. Here, however, Park-Mark authorized the overpayments for five years. Park-Mark argues that although the payments were authorized, it overpaid the Funds based on a mistake of law or fact. Because there is no dispute whether the overpayments were authorized by Park-Mark, we do not consider if this equitable factor favors Park-Mark or the Funds.[5]

Fourth, equity may favor a repayment if the Funds were unjustly enriched by Park-Mark. See id. As discussed above, no evidence was presented by Park-Mark refuting the Funds' evidence that they were not unjustly enriched. Equity does not favor a refund where no unjust enrichment occurred. Cf. Dickey v. Royal Banks of Mo., 111 F.3d 580, 583 (8th Cir. 1997) ("[A] court will force a defendant to disgorge a windfall if it is equitable to do so."). Therefore, this factor weighs in favor of the Funds.

Finally, Park-Mark contends that the Funds' actions and, more specifically, their decision to retain the overpayments are arbitrary and capricious. We disagree. Based on the evidence in the record, the Funds decided to retain the overpayments after investigating the matter and determining that refunding the overpayments to Park-Mark would negatively impact the pension credits Park-Mark's employees had accrued. On these facts, we do not find this conduct to be arbitrary and capricious.

_____

[5]The factors articulated by UIU Severance are not a "complete catalog" of what a court may consider, nor is any one factor controlling. See UIU Severance, 998 F.3d at 513. Although we find that the issue of ratification favors neither party, we ultimately hold that the three remaining equitable factors do not favor restitution.

<u>Cf.</u> <u>Young Am.</u>, 101 F.3d at 549 (holding one-year limit on premium refunds arbitrary and capricious).

Based on the above analysis, equity does not favor a refund on these facts.  We conclude the district court properly granted summary judgment in favor of the Funds.

## III.

For these reasons, we affirm the district court.

_____